EASTERN DIST.
*February*, 1836.

CASANOVA'S
HEIRS
*vs*,
AVEGNO.

CASANOVA'S HEIRS *vs*. AVEGNO.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF
NEW-ORLEANS.

Where certain slaves belonging to the community were adjudicated to the widow, the acceptance of a special conventional mortgage by the Court of Probates, with the advice of a family meeting in lieu of the legal one, which affected the whole property of the widow, was held to liberate the slaves from such legal mortgage, as relates to third persons and purchasers.

A person about to purchase property from a tutor, is bound to inquire how the rights of the minors are secured. If he find them secured by a special mortgage, he is justified in concluding that the general mortgage in favor of the minors, has ceased to exist.

This is partly a hypothecary action, and in part an action of revendication against the third possessor of three slaves, to recover one undivided moiety thereof in the plaintiffs' own right, and to enforce a legal mortgage against the other moiety to which said slaves were subject in the hands of their mother as natural tutrix.

The plaintiffs are the heirs, assignees and legal representatives of the late Francisco Casanova, deceased, in 1822, when they were minors, and at which time their mother, Catarina Acosta, took the oath as their natural tutrix. That she failed to render an account of her tutorship, and in July, 1829, an action was brought to compel her to account; to ascertain the balance due to them, and to claim the undivided

moiety of three slaves which had been adjudicated to her.
Judgment was rendered in the Court of Probates in their favor,
for a large sum, and the adjudication of the property annulled.
See the facts of this case in 1 *Louisiana Reports*, 179.

By the advice of a family meeting, the three slaves,
Eulalie, François and Audine, with other community
property, by and with the advice of a family meeting, was
adjudicated to the mother. In 1827, she sold these slaves to
Philippe Avegno, the present defendant.

The plaintiffs in their former suit against Acosta, the
mother, having succeeded in annulling the sale and adjudica-
tion to her of the community property, now sue for the
recovery of the three slaves in question, in their own right, as
heirs of their father, and under their legal mortgage against
their mother and natural tutrix.

The defendant pleaded the general issue. He, also,
averred, that the judgment annulling the sale of the com-
munity property to the mother of the plaintiffs, could not
affect him, as he was no party thereto; and that he purchased
the slaves now claimed before the rendition of said judgment,
by public notarial act, and holds them by a just title.

Upon these pleadings and issues, the parties went to trial
before the court and jury.

It appeared in evidence, that among the property adjudicated
to the mother, was a house and lot in New-Orleans, which
the father of the plaintiffs stated in his last will, to be
common property. This was declared, by the judgment
annulling the adjudication, to be his own property, and that
it belonged to him before his marriage.

Previously to this, and when the mother was about to
sell the slaves in question to the defendant, she, with the
advice of a family meeting, gave a special mortgage on the
house and lot, and cancelled the general mortgage on the
slaves in favor of the minors. After this transaction, it was
that the house and lot was declared to be the property of the
father before marriage.

The judge charged the jury in writing, at considerable
length; the close of it was excepted to by the counsel for

25

EASTERN DIST.
February, 1836.

CASANOVA'S
HEIRS
vs.
AVEGNO.

the plaintiffs. This was the part wherein the jury were told, " that the defendant is protected by the raising of the general mortgage of the minors by the Court of Probates, in consequence of the special mortgage having been executed and accepted, and that the subsequent avoiding of the said special mortgage, on account both of fraud committed in making the inventory, and of the said special mortgage resting on the minors' own property, cannot affect a *bonâ fide* purchaser and third possessor, who acquired the slaves in contestation from the tutrix of the minors in good faith, while the special mortgage stood recorded, and previous to the suit and judgment annulling it."

The foregoing are the principal facts upon which the cause was decided. The jury returned a verdict for the defendant. From judgment rendered thereon, the plaintiffs appealed.

*J. Seghers*, for the appellants, contended,

1. That as it relates to the plaintiffs, the sale made by their mother and tutrix to the defendants, is utterly null and void.

2. This sale is null, because the plaintiffs' right of ownership to the undivided moiety of the slaves thus sold, is absolute ; resulting from their inheritance from their deceased father.

3. Their right of mortgage on all the property of their mother, as their natural tutrix, is complete for the recovery of any balance due to them under her administration of their property. This embraces the other moiety of the slaves in contest.

4. It follows from the above, that the defendant by his deed of sale, acquired but one undivided half of these slaves, as community property, and the title to this he takes *cum onere*. And this moiety is wholly embraced by the plaintiffs' legal mortgage. 2 *Louisiana Reports*, 524. 3 *Ibid.* 211. 1 *Ibid.* 179.

*De Armas*, contra.

1. The verdict and judgment must stand, because the case involved a question of fraud, as regards the conduct of the

EASTERN DIST.
*February*, 1836.

mother in relation to the community property, and the jury have found in favor of the defendant.

2. The defendant bought the slaves in question free of mortgage; the general mortgage in favor of the plaintiffs having been previously *raised* by the advice of a family meeting and the order of the Probate Court.

CASANOVA'S
HEIRS
*vs.*
AVEGNO.

*Bullard, J.*, delivered the opinion of the court.

The leading facts in this case are sufficiently stated in the case of the *Heirs of Casanova* vs. *Acosta et al.*, 1 *Louisiana Reports*, 179.

The plaintiffs, heirs of Casanova, having succeeded in that suit against their mother, in annulling the adjudication made to her by the Probate Court, of the property falsely represented to be common, when in truth it was the exclusive property of their father, brought the present action to recover one undivided half of three slaves, purchased by the defendant of their mother, after the adjudication to her, and to hold the whole subject to their legal mortgage, which mortgage had by the advice of a family meeting, and the authority of the Court of Probates, been released on all except certain specific property. This last proceeding had also been annulled in the suit against the mother of the plaintiffs; but as the present defendant was not a party, that judgment must be considered as *res inter alios acta.*

The defendant exhibits, as his title to the three slaves, an act of sale from the widow of Casanova, together with the adjudication to her, of the same property, by the Court of Probates, and the solemn declaration in his last will, by the father of the plaintiffs, that all the property possessed by him belonged to the community.

It is admitted in the petition, that the slaves in question were acquired by Casanova during the marriage, and consequently belonged to the community. As it relates to them, we cannot perceive how there was any fraud in the adjudication to the widow, at their appraised value. One undivided half belonged to the widow on her acceptance of the community, and she acquired, at least in relation to third

EASTERN DIST.
February, 1836.

CASANOVA'S
HEIRS
vs.
AVEGNO.

Where certain slaves belonging to the community were adjudicated to the widow, the acceptance of a special conventional mortgage by the Court of Probates, with the advice of a family meeting, in lieu of the legal one, which affected the whole property of the widow, was held to liberate the slaves from such legal mortgage, as relates to third persons and purchasers

persons, a good title to the other half, subject to the legal mortgage in favor of the minor heirs, of whom she was tutrix. The only remaining question, therefore, is whether the acceptance of a special conventional mortgage by the Court of Probates, with the advice of a family meeting, in lieu of the legal one, which affected the whole property of the widow, liberated the slaves in dispute from such legal mortgage as relates to third persons.

The forms required by law for the validity of such a proceeding, appears to have been observed. The sole ground of nullity is the alleged fraud, which consisted in representing all the property as common, and in the concealment of certain property, and the omission of any mention of it in the inventory. The defendant purchased under the faith of these judicial acts, not only without any knowledge of the alleged errors or fraud, but with a knowledge that the father of the plaintiffs in his testament had declared that the whole property belonged to the community. Whether that declaration alone on the part of the ancestor would preclude the heir in relation to third persons from recovering, it is not necessary to decide; but, coupled with the fact which appears to us abundantly shown in the record, that the price paid for the slaves by the defendant was a debt due by the estate of Casanova, and that in effect the heirs received the price, by a liberation of that charge upon the estate, we consider the proceedings in relation to these slaves as binding on them.

A person about to purchase property from a tutor, is bound to inquire how the rights of the minors are secured. If he find them secured by a special mortgage, he is justified in concluding that the general mortgage in favor of the minors, has ceased to exist.

The plaintiffs excepted to a part of the charge of the judge to the jury, on the trial in the first instance. The judge told the jury, that in his opinion, a person desirous of purchasing property from a tutor, is bound to inquire how the rights of the minors are secured; if he find that these rights are secured by a special mortgage, he is justified in concluding that the general mortgage in favor of the minors has ceased to exist, especially when recurring to the Court of Probates, he finds that the special mortgage has been accepted by a family meeting and by the court; and that it is on the responsibility of the under tutor and family meeting, the

special mortgage is accepted; once accepted and recorded, <span style="float:right">EASTERN DIST.</span>
the general mortgage resulting from the tutorship ceases to *February*, 1836.
exist with regard to third persons. This court fully concurs <span style="float:right">ZACHARIE'S<br>ADMINISTRATOR</span>
with the court below on these points of law, and as the jury· <span style="float:right">*vs.*</span>
found accordingly in favor of the defendant, the judgment <span style="float:right">PRIEUR ET AL.</span>
must be affirmed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with costs.