ELIZABETH JANE BARNARD and another *v.* JAMES ERWIN and another.

The object of the special mortgage authorized to be executed by the act of the 11th March, 1830, relative to the tutors and curators of minors, is to secure the rights and property of the minor, and the faithful administration of the tutor until his final discharge. It is a substitute for the general legal mortgage, so far as the rights of the minor are concerned ; and is special only as to the property subject to it. As soon as the special mortgage is accepted and recorded, the general mortgage resulting from the tutorship ceases to exist as to third persons, and the mass of the property will be released, though an error may have been committed in ascertaining the amount due to the minor at the time of executing the special mortgage. The

Barnard and another v. Erwin and another.

latter is not restricted to the amount supposed to be due at the time it was given. The property specially mortgaged will be bound for whatever may be due from the tutor on the final settlement of his accounts. The amount found due to the minor by the Court of Probates during his minority, will not be conclusive upon him. The account may be opened on the final settlement of the tutorship.

Where in order to pay the amount due to one who has attained his majority, it is necessary to sell property, specially mortgaged by a tutor under the act of 1830, to secure the rights of the minors, the property will be sold, to make the amount due to the former, subject to the mortgage in favor of the other minors. To sell the whole property for cash, and to pay over the amount due to those yet minors to their tutor, would be to defeat the very purpose of the mortgage.

In an action against a third possessor of property, specially mortgaged by a tutor under the act of 1830 to secure the rights of the minor and the faithful discharge of his duties as tutor, where the rights of the minor had been settled by a judgment of the Court of Probates, the plaintiff, the former minor, will be entitled to legal interest, on the amount so fixed, from the date of the judgment settling his claim.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

BULLARD, J. The petitioners, who are the children of William Brand, one of them emancipated by marriage, and the other two minors represented by their under-tutor, allege that they are the sole heirs of their deceased mother, the wife of William Brand. That, on the decease of their mother, their father became their tutor, and was duly qualified as such. That he instituted proceedings in the Probate Court for the purpose of liquidating and determining the rights of the petitioners in the succession of their mother, which proceedings resulted in a judgment, whereby the rights of the petitioners were liquidated and settled at $15,894 08, which liquidation was made with the view of giving a special mortgage in favor of his minor children, in lieu of the general one resulting from his tutorship. That, finally, on the 21st of June, 1837, by notarial act, he declared that he gave the special mortgage on a particular piece of property, in order to secure the sum of $41,600·89, and his faithful administration and performance of his duties as tutor of his minor children.

They represent that this special mortgage was accepted by the Court of Probates, in lieu of the general mortgage which had existed in their favor, which general mortgage was ordered to be cancelled, and the special one to stand alone as security for the tutor's faithful administration of the property of his children.

They further represent that afterwards, in 1841, they discover-

ed that there was an error of calculation in the report of the auditor, which formed the basis of the decree of the Court of Probates, establishing the rights of the petitioners in the succession of their mother as above stated, and that their claim in truth exceeded the amount thus fixed by $12,396 62, whereupon they instituted proceedings in the Court of Probates for the purpose of correcting said error, which resulted in a judgment, signed on the 8th of December, 1841, whereby the former judgment was amended, and the rights of the petitioners finally settled at the above amount over and above the sum previously fixed, making in all $28,290 70 due to them in right of their mother; one-third of which sum, to wit, $9430 23, was decreed to be paid to the plaintiff, Elizabeth J. Barnard, aided by her husband, and the whole to remain secured by mortgage on the property specially mortgaged.

The plaintiffs further aver that the premises thus mortgaged are now in the possession of James Erwin, by whom they were acquired, subject to said mortgage; that due demand has been made of William Brand, the principal debtor, and of Erwin, the third possessor, who refuse to pay the sum due to E. J. Barnard, one of the petitioners; and that said Erwin denies that the premises are liable in his possession to the mortgage, although duly recorded long before he acquired the property.

They, therefore, pray that Erwin may be cited, as well as Brand, and that it may be decreed that the mortgaged premises are bound for the payment of the sum of $28,290 70, with legal interest from June 16, 1837, the date of the judgment fixing the amount of the plaintiffs' claims, until paid; and that the property may be sold for the payment of the same, one-third of the price to be paid in cash to E. J. Branard, and the other two-thirds to remain in the hands of the purchaser, secured by mortgage on the property, with interest, payable in equal portions to the other two petitioners, Frederick Browder Brand and Ann A. Brand, as they shall attain the age of majority or be emancipated.

The third possessor answers, that he is in possession of the house and lot mentioned in the petition, by an unincumbered title, by virtue of a sale under the authority of a court of competent jurisdiction, except that it is subject to a mortgage amounting to $15,894 43, which was fixed and ascertained by a judgment of the

Court of Probates.   He avers that, trusting to the truth and cor-
rectness of the liquidation and judgment of the court establishing
the rights of the minors, he took a mortgage on the house and lot,
in total ignorance of the rights of the minors, further than is shown
by the proceedings in the Court of Probates as they existed at the
time of his mortgage.   He further alleges that William Brand was
possessed of a large property in real estate, which was unincum-
bered at the time that he gave his mortgage to this defendant, and
which he has since alienated, and that the plaintiffs are bound to
go on the property which remained unincumbered, and to look to
the property last alienated.   He, therefore, pleads the judgment of
the 16th June, 1837, as *res judicata*, and a bar to these proceedings.

William Brand, the tutor, answers that he, as tutor, is entitled
to receive any sum of money that may be coming to the two mi-
nors, Frederick and Ann, whenever the same shall become due ;
and he prays for a judgment to be paid the amount coming to
them, out of the sale of the mortgaged premises.

The Commercial Court was of opinion that a judgment of liqui-
dation of the rights of minors, and a special mortgage given in ac-
cordance with the act of 1830, are so far binding on minors, in favor
of third persons, that any purchaser of the property, so specially
mortgaged, is only bound to pay the amount of the judgment of
liquidation, with interest; and that, on paying that, he will hold the
property free from all other claims of the minors, although they
may show manifest error against them in the liquidation.   The
order of seizure was consequently restricted to the sum settled by
the first judgment of the Court of Probates.   The plaintiffs have
appealed.

*Benjamin* and *Preston*, for the appellants.   The power granted
by law to the tutor to give a special mortgage, is for the advantage
of the tutor, and restrictive of the rights previously granted to
the minor, and should be strictly construed.   The intention of the
legislature was to restrict the minor's recourse in relation to the
property on which he was to exercise his rights, but not in relation
to the extent or amount of his rights.   He has the same rights by
law as when the mortgage was general, but must exercise them
only on the property specially mortgaged.

The act of February, 1817, sec. 6, (see Bullard & Curry's

Digest, p. 590–1,) in authorizing the special mortgage to be given by a tutor, required no previous liquidation. The result was, that frequently mortgages were given on property of less value than the amount of the minor's claim. The act of 11th March, 1830, sec. 8, (Bullard & Curry's Dig., p. 809,) as a further protection for the minor, requires that the judge shall not accept the special mortgage without a previous liquidation, in order that he may decide whether the property will probably suffice to cover the minor's claim; but the law *no where limits the minor's rights to the sum thus liquidated.* This provision in his favor cannot be tortured so as to operate against him, especially when, by the very words of the law, sec. 1, the tutor is to give the special mortgage " for the security of the rights and property of his children, *and the faithful discharge of his functions as tutor.*"

The very words of the act of mortgage itself in the present case, show that it was not intended to secure the re-payment of a particular sum only. The act of mortgage says that the mortgage is given " in order to secure the above mentioned sum of $41,600 89, and *his faithful administration and performance of his duties as tutor of his said minor children.*" Now his very first duty, as tutor, would be to correct, in favor of his children, the error of calculation of $12,396 62, which is admitted to exist on the very face of the papers. Nor can any third person complain, who takes property subject to such a mortgage. He runs the risk of further sums being due, of a tutor's subsequent receipt of funds, or of any contingency which would make it his duty, " in the faithful performance of his functions as tutor," to pay a larger sum than that liquidated by the judgment of the Probate Court.

The question, in this case, is not new. In *Stafford and wife* v. *Villain,* 10 La. 329, this court decided, expressly, that a liquidation of accounts between the tutor and under-tutor, homologated by a decree of the Court of Probates, is not binding on the minor, who may, on coming of age, examine and contest all the accounts. See also *Lesassier* v. *Dashiell,* 17 La. 201. If the question were new, this court would not hesitate to repudiate a doctrine which would so readily lead to monstrous abuse, as that contended for by the appellees. Collusive liquidations of accounts between the the tutor and under-tutor would enable the former to release all

his property from the general mortgage, and afterwards, by a sale of the property specially mortgaged, to cut off the minor's recourse even on that. In the present case, no collusion is pretended. Yet, on the face of the accounts, the minors are injured to the amount of $12,396 62, as is admitted, by an error of calculation.

In relation to the interest, the right of the minors is *res judicata* by the judgment of the Court of Probates, which is not appealed from, and which cannot be collaterally attacked or inquired into. Besides, the law accords it to minors, and no offset is shown by the record. This point is directly decided in the case of Dashiell, 17 La. 201.

*A. Hennen,* for the third possessor and the tutor. The petitioners can obtain judgment only for the amount of the mortgage, taken by the Parish Judge to secure their rights in the estate of their mother. All formalities having been fulfilled in this act, and the amount ascertained by a judgment, nothing more can be recovered in this action. *Lalanne's Heirs* v. *Moreau,* 13 La. 431. *Lesassier* v. *Dashiell,* 17 La. 194. Acts of 1830, p. 46. The error in calculation, having received the sanction of the judge and become a judgment, and third parties, (the defendant, by mortgage,) having treated with the father, (the mortgagor,) and acquired rights under that judgment, the error of calculation cannot now be rectified to the prejudice of Erwin. Muhlenbruch, Doctrina Pandectarum, § 133. Just. Code, lib. 2, tit. 5, De Enore Calculi. Ib. lib. 7, tit. 52, c. 2, De Re Judicata. Ib. lib. 3, tit. 1, c. 2. *Flint* v. *Cuny,* 6 La. 67.

The petitioners are not entitled to interest on the amount of the sum due, except from the judicial demand, because : 1. Their tutor was bound to collect the interest annually, and having enjoyed the administration of the estate is presumed to have done so. 2. Their tutor was authorized to expend the amount of interest for the education and maintenance of the minors, it not being more than sufficient for that purpose. 3. The mortgage does not secure interest to the petitioners. 4. The law did not authorize the judge to grant any interest. 5. The tutor was authorized to compensate the expenses and education of the minors,

Barnard and another v. Erwin and another.

with the revenues of their estate. 6. The usufruct of the minors' estate belongs to the father.

The defendant Wm. Brand, continues to be the natural tutor of his minor children not emancipated, though removed out of the State. *De la Croix* v. *Boisblanc*, 4 Mart. 715, 716. He cannot be deprived of the tutorship, at the suggestion of creditors, or of any one else. *State of Louisiana* v. *Judge of the Parish of Orleans*, 6 La. 365. The judgment of the court below deprives the defendant Wm. Brand, of his right of administering the rents and interest of the money due the minors, to whom he is still tutor, inasmuch as he can neither receive the capital nor the interest due them; and the judgment requires the whole to remain inactive until the minors are emancipated. The natural tutor is authorized to manage the estate of the minor, and to deduct *one-tenth* of the revenues as his commission; but the present judgment deprives him of these commissions. Civ. Code, art. 342. The tutor has no means to defray the expenses of the minor, as the judgment takes the whole of the revenues of the estate from his control, and he may have no means of his own to pay for their maintenance and education.

The judgment of the court below violates directly the provisions contained in the 341st article of the Civil Code, which declares that, " the tutor shall be bound to invest, in the name of the minor, the revenues which exceed the expenses of his ward, whenever they amount to $500; in default thereof he shall be bound to pay on such excess the interest allowed by law;" and that " the investment of the funds of the minor must be made by public act, and secured by mortgage." Any interest on the capital due to the minors since 1837, the date of the mortgage, and all interest to accrue, should be paid to the tutor. The judgment of the court below should be amended accordingly. By the will of the mother of the petitioners, the management and control of the estate was to remain in the hands of the father, until the youngest child becomes of age; consequently the petitioners cannot, by this judgment, deprive the father of the enjoyment of any part of it until that event; and the judgment is erroneous in decreeing any thing to be paid to the minor emancipated by marriage, as the whole estate should remain with the tutor, and the will of the mo-

ther be complied with, as she had the power by law to make such a disposition of her estate in favor of her husband, the defendant Wm. Brand.

The judgment of the court below is injurious to the interests of both the tutor and the minors, and should be reversed and rendered in conformity with the principles above stated. The tutor, Wm. Brand, if in possession of the money, as he ought to be, could place it out on mortgage, in the name of the minors, at ten per cent interest per annum. Under the judgment of the court below this advantage is lost to him and to the minors.

*Benjamin*, in reply. The tutor having withdrawn all his property from the operation of the minors' mortgage, except the property in question, which was specially mortgaged, and having then sold that property, complains with ill grace that he is not permitted to receive the amount coming to the minors from the sale of the property. If this money be paid to Wm. Brand now, his children will remain totally deprived of all security, as the general mortgage has been extinguished at his own instance, and the special mortgage will be extinguished by the sale. Under these circumstances, the court below could in no manner protect the minor, otherwise than by decreeing that the sums due to them should be retained by the purchaser to be paid to them at their majority.

The will of Ann C. Brand contains no such provision as is stated. It provides that the property " shall be held in common between Brand and his children, till the majority of the youngest child."*

---

* The will, after declaring that the father and mother of the testatrix are dead, and that she has three children living by her husband, Wm. Brand, proceeds :

" I hereby nominate and appoint my dear husband, William Brand, and George Green, executors of this my last will and testament. In the event of my death, I request that all the property held by me, by virtue of the community of *acquêts* and gains existing between my said husband and myself, shall be kept together until the full age of our last child, in the same manner that it may be in at the time of my decease ; and that the same shall be rented or hired out by my said husband, for any price that he may deem advisable, for the benefit of the minors ; and my said executors are fully empowered to act and do every thing that will tend to the benefit of my said estate, without the intervention of justice as far as possible.

" It is my wish that all my said children shall be well educated, out of such sum as may be coming to them from the community aforesaid.

" Whatever portion of the community property may be coming to the minors herein

Wm. Brand's very first step was to violate this provision, by having all the property adjudicated to himself; and he now pretends to claim the benefit of 'it.

BULLARD, J. This case presents the question, whether a special mortgage given by a tutor to secure the rights of his pupil, in pursuance of the act of 1830, is restricted to the amount found due to the minors at the time the mortgage was given, or whether, although restricted as to the property subject to it, it does not secure all that may be found due to the minor resulting from the administration of the tutor, up to the time of the majority or emancipation of said minor?

The act of the legislature of 1830, which authorizes the taking of such special mortgage, declares, that "tutors, &c. may, and they are permitted to give a special mortgage on immoveable property, not slaves, for the security of the rights and property of their children, and the faithful discharge of their functions." It requires the advice of a family meeting that the property offered to be specially mortgaged, is of sufficient value to *secure the rights* of said child or children, in capital and interest. It provides that, after the execution of said mortgage, all other property of the tutor shall be completely discharged from all legal, tacit, or other mortgage, arising from the tutorship. B. & C.'s Dig. 807.

Thus it appears that the object of the special mortgage is to secure the rights and property of the pupil, and the faithful administration of the tutor. It is a substitute for the general legal mortgage so far as the rights of the minor are concerned, and although termed a special mortgage, it is not necessarily special as to the amount of money it may be intended to secure. It is special as to the property subject to it, and *special* is the correlative of *general*. "A general mortgage," says the Code, "is that

---

named, and such others as may be born of our joint marriage, on the last child's becoming of age as aforesaid, I wish divided between them, share and share alike; but should all, or either of my said children attempt, in any manner, to interfere with this my last will, and require a separation of the property held in community aforesaid, before the time above specified, then, and in such case, whatever portion may be coming to them, I wish reduced to the smallest sum that the laws of the state will permit, and the amount, so taken from such child or children, I wish divided amongst the rest of the heirs, share and share alike."

which binds all the property present and future of the debtor. A special mortgage is that which binds only certain specified property." Art. 3255. The mortgage required by the act is conventional, as well as special. A mortgage may be stipulated for the fulfilment of any obligation whatever, even for the completion of a deed. ' Art. 3258. It may be given for an obligation which has not yet risen into existence, as when a man grants a mortgage by way of security for endorsements which another promises to make for him. Art. 3259.

It was clearly the intention of the legislature to secure to the minor the faithful administration of the tutor up to the moment of his final discharge, and, therefore, the amount secured by the mortgage is not necessarily to be ascertained at the moment the mortgage was executed. If other sums should come into the hands of the tutor, the property mortgaged would stand as security. The amount found due by a settlement in the Court of Probates, during the minority of the pupil, is not conclusive upon him. It may be examined into afterwards on settling the tutorship and rendering a final account. *Stafford et ux.* v. *Villain et al.,* 10 La. 319.

. It was as clearly the duty of a faithful tutor to correct such an error as was discovered in this case, as it would be to recover from a third person the same amount discovered to be due after the execution of the special mortgage. In both cases the sum found to be due is the property of the minor, and its administration and final payment to the pupil, at his age of majority, are secured, in our opinion, by the mortgage in question.

. Nor does this view of the case differ from that expressed in the case of *Casanova's Heirs* v. *Avegno,* 9 La. 192. In that case, and in several subsequent ones, we held that when the special mortgage has been accepted and recorded, the general mortgage resulting from the tutorship ceases to exist as to third persons ; and that whatever error may have been committed in ascertaining the amount due to the minor, the mass of the property is validly released from the general mortgage so far as third persons are concerned. *Lesassier* v. *Dashiell,* 17 La. 194. The case of *Le Blanc* v. *His Creditors,* 16 La. 120, is to the same effect. All these cases establish the principle that the mass of the property is re-

Barnard and another v. Erwin and another.

leased, as to third persons, by the execution of the special mortgage, but by no means restrict the special mortgage to the particular amount apparently due to the minor at the time it was given. As to such special mortgage, the terms of the mortgage itself notified third persons, that the property stood as the pledge of the minor, not merely for a particular sum, but for the faithful administration of the tutor.

We, therefore, conclude that the house and lot is mortgaged to the full amount found due to the minors by the last settlement in the Court of Probates. We cannot, however, accede to the prayer of the tutor, that the property may be sold for cash, and that the share coming to the children, yet minors, may be paid over to him. That would defeat one of the purposes of the mortgage itself, which was to secure his future fidelity in his administration, and would leave the minors without any security whatever. The property must be sold to make what is coming to E. J. Barnard, subject to the mortgage in favor of the other minors.

The judgment of the Commercial Court is therefore reversed; and, unless the defendant shall elect to pay the amount claimed by the plaintiff and to hold the property subject to the mortgage of the two minors, it is further ordered, the parties agreeing, that the same be sold for such amount in cash as may be required to pay the costs, and the balance of the price payable one-third in cash, and the remainder at the age of majority of the said minors respectively, or of their legal emancipation, in equal shares, bearing interest from the day of sale at five per cent per annum. That the cash installment be applied, so far as may be necessary, to pay the sum of $9,430 23 to the plaintiff, Elizabeth Jane Barnard, assisted by her husband; the remainder of the price to be retained by the purchaser subject to the rights of said minors not emancipated, and secured by mortgage on the said house and lot; and that the appellee pay the costs of this appeal.