### C. B. SHERROD, Trustee, &c., et al. *v.* D. E. CALLEGHAN et al.

Effect will be given to marriage settlements made in another State, after the removal of the parties to this State, so far as those settlements do not create prohibited substitutions, *fidei commissa*, or new tenures of property unknown to the laws of Louisiana.

The appointment of a trustee in a marriage settlement under the common law, is matter of form merely, and does not affect the substance of the contract. A trust resulting from such an appointment will be recognized in this State.

Where a marriage settlement is made in a common law State, by which all of the wife's property is secured to her; in an action by her trustee in this State to recover slaves, parol evidence will be admissible to identify the slaves as being covered by the settlement, although they were not named in it.

Where, before marriage in another State, the wife had secured to herself her property, by a settlement, valid, under the laws of the State where made, her husband will not be permitted to defeat the settlement, by a sale of the negroes in this State.

Recording a marriage settlement in the county of the domicil of the parties, is not, under the registry laws of Alabama, essential to its validity.

A PPEAL from the District Court of the Parish of Avoyelles, *Cushman*, J.
*H. Taylor*, for plaintiffs  *Waddill* and *F. Cullum*, for defendant.  *Hitch-born*, for warrantor.

SHERROD
*v.*
CALLEGHAN.

PRESTON, J.  This suit was brought to recover two slaves named *Daniel* and *Mary*, claimed by the plaintiffs, and for the value of their services.  The defendant sets up title to the slaves, by virtue of a sale to him from *John Flannagan*, on the 1st of January, 1849, for the price of thirteen hundred dollars, and calls *Flannagan* in warranty ; he being absent, a curator *ad hoc* was appointed for him.

Unimportant exceptions of the warrantor being overruled, he and the defendant denied title in the plaintiffs, and alleged a good title and *bona fide* possession in the defendant.

There was a verdict and judgment in favor of the plaintiffs for the slaves, and the value of their services, and the defendant and warrantor have appealed.

The plaintiff, *Harriet Flannagan*, was married to *Flannagan* in Marshal county, in the State of Alabama, on the 12th of October, 1846.  The testimony induces me to believe, that she resided at the same time in Madison county, in that State, and he in Texas.

It is proved by the will of her former husband, also by the testimony of *Mary McGaley*, *Robert* and *Albert Sherwood*, to which no formal exception has been taken, that she owned three slaves, and others, before her marriage with *Flannagan*.

A marriage settlement was made between them, by which all her property was conveyed in trust to *C. B. Sherrod*, for her use, to be held separately from her intended husband and at her sole disposal, notwithstanding her intended marriage.  The marriage settlement was recorded in the county where the marriage was celebrated, but not in the county where the spouse resided and held the slaves.  In 1847, the parties moved with the slaves to, and settled in Victoria county, in the State of Texas, and the marriage settlement was duly recorded in that county in that year.

We officially know that slaves are personal property in Alabama and Texas, that such settlements are legal and equitable means in those States, of securing to wives their property, which would otherwise vest in the husband by marriage, and that the trustee holds the legal, while the equitable title and possession remains in the wife.

I am not satisfied that the neglect to record the marriage settlement in the county of Alabama, where the slaves were at the time of the marriage, deprived the wife of her rights to them under the settlement.

They were not named or described in the marriage settlement ; but they were personal property—she settled upon herself all her property, at the time of her marriage.  It might have been identified in Alabama by parol, and she cannot be deprived of her property by the act of her husband in carrying it evidently to a State where the slaves became immovable property, and parol proof as to title is inadmissible.

Shortly after their location in Texas, *Flannagan* clandestinely left that State, without the knowledge of his wife, took the slaves in controversy with him, and fraudulently sold them to the defendant, residing in the parish of Avoyelles, subsequently to the record of the marriage settlement in Texas, where the parties resided.

SHERROD
v.
CALLEGHAN.

The facts stated, brings this case precisely within the principles recognized in the case of *Youngblood et als.* v. *Flagg*, 11 La. 341, the husband could not divest the wife of the property or convey any interest in or right upon it, and the sale subsequently to the recording of her title, even if the registry was necessary at all, produced no effect.

The slaves sued for are fully identified by *Robert Sherrod*, with two of those owned by the plaintiff before her marriage with *Flannagan*. And although the marriage settlement does not specify and describe the slaves, yet testimony, that of *Albert Sherrod* and Mrs. *McGaley*, which was not excepted to, shows conclusively that they were a part of the property embraced in the marriage settlement. The objection and exception to the marriage settlement as evidence, was as to give effect not to its admissibility in evidence, and being admitted and aided by the testimony of these witnesses, shows a perfect title in the wife and her trustee.

It becomes unnecessary, therefore, to examine the exception to the testimony of the other witnesses to the same effect.

If we did not officially know the laws of Alabama and Texas, on the subject under consideration, we should be obliged, for the want of evidence, to consider them similar to the laws of our own State, which would render the rights claimed by the wife more indispensable.

A reasonable allowance was made by the jury for the value of the services of the slaves.

The verdict and judgment meet the justice of the case, and do not conflict with any principle of law.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed, with costs.

EUSTIS, C. J. and ROST, J.* The plaintiff, *Harriet Flannagan*, seeks to recover from the defendant, two slaves which she alleges are her separate property, under a marriage settlement executed in Marshal county, State of Alabama, previous to her marriage with *John B. Flannagan*, her husband.

The defence is, that the marriage settlement under which the plaintiff claims cannot operate to his injury, because the slaves claimed are not named therein. That under the laws of Alabama, the title to those slaves being in the wife at the time of the marriage vested in the husband from whom he acquired them in good faith, and for a valuable consideration. It is further urged, that the marriage settlement, if otherwise valid against the defendant, would be inoperative in Alabama against creditors of *bona fide* purchasers, for want of recording in the proper county, and it could have no greater effect in this State than it would have there. The judgment below was in favor of the plaintiff, and the defendant has appealed.

This case is in many respects similar to that of *Young* v. *Templeton*, 4th Ann. 254. In that case, we considered a marriage settlement executed in the State of Mississippi, in the same light as we have often considered marriage contracts executed in foreign countries, where the civil law prevails, by persons domiciliated in those countries, and disposing of property there situated

---

*This case was decided in June, 1852. Present, *Eustis*, C. J., *Rost*, J., and *Preston*, J. An application for a rehearing was made and refused, but at what term, and what Judges were present, the record does not show.

It may not be improper to state that none of the Records from Alexandria give the name of the Judge who delivered the opinion of the court. The Reporter being familiar with the handwriting of the Judges, has been guided by it, in affixing their names to the several judgments.

in both cases alike. We feel bound to give effect to such contracts, after the removal of the parties here, so far as they do not create prohibited substitutions, *fidei commissa*, or new tenures of property unknown to our laws.

The marriage settlement in this case, if otherwise valid, vested in the plaintiff a title known to our laws. She was to remain under it, the absolute owner of the property of which she was possessed at the time of her marriage.

The appointment of a trustee was a matter of form, not of the essence of the contract; it might have been dispensed with and, in that case, the husband would have been held in law the trustee. 2d Kent Coms., No. 162, and cases there cited. I have said this much to point out the distinction between marriage settlements and other titles in trust, which we uniformly refuse to recognize.

On the merits, I am of opinion that the case is with the plaintiff. The act of settlement is sufficiently formal, and under the equity system of jurisprudence prevailing in Alabama, parol evidence would have been admissible therein and of the description it contains, to identify the particular property claimed. *Cartwright et ux* v. *Hutchinson*, 2 Rob. 407.

I am satisfied that, under the registry laws of Alabama, the recording of the deed in the county of the domicil of the parties, was not indispensable to its validity. *Swift* v. *Fitzhugh*, 9 Peters' Reports, 39, 59, and *Smoot* v. *Fitzhugh*, 9 Peters' Reports, 72 and 75.

Rehearing refused.