By the Court, Monell, J.
I am willing to assume in this case that Callaghan & Miller were the exclusive owners of the several judgments mentioned in the complaint. The assignment of the first judgment was absolute upon its face, carrying with it the debt, and constituting the assignees the only parties in interest. As such assignees, they had legal power to receive payment and make satisfaction of all the judgments. The first question therefore of importance is, whether the satisfaction piece executed by Miller of the judgment of affirmance of July, 1860, operated to discharge in law the two previous judgments. That judgment was not, as was claimed by the respondent, and as represented in the satisfaction piece, a judgment for §2259.15, but a mere affirmance of the judgment of February 29,1860. And the paper annexed to the judgment roll, if it could be considered as a necessary or proper part of the record, contains a reference merely to the judgment appealed from, and does not in terms or otherwise award a new judgment for the whole amount. It would have been irregular if it had done so. I therefore regard the July judgment as a judgment merely confirming that appealed from and awarding the costs of the appeal. It necessarily follows, therefore, that as to its legal effect the satisfaction piece operated as a discharge of that judgment only. It clearly did not satisfy or authorize the discharge of record of the other judgments. It was executed by Miller, as the attorney of record, upon receiving a less sum than thé whole amount due, and more than two years after the filing of the judgment rolls. For these reasons the satisfaction piece was inconclusive as respects the previous judgments, (2 R. S. 362, § 24; Lewis v. Woodruff, 15 How. Pr. 539,) and operated only as a discharge of the July judgment.
*74 Laying the satisfaction piece, therefore, ont of view, as a legal discharge of the prior judgments, the question remains, whether the agreement of Miller (which I will assume was proved) to receive two hundred dollars in payment of all the judgments, can be enforced, and his co-assignee be compelled to discharge those judgments of record without further satisfaction. As a naked agreement, unaffected by any supposed partial execution of it, the law is well settled, that it would have no force. And even the payment and re-ceipt of the two hundred dollars as a part execution would not be a satisfaction of the whole, or a bar to a recovery of the balance. (Seymour v Minturn, 17 John. 169. Lewis v. Woodruff, supra. Moss v. Shannon, 1 Hilt. 175.)
But it is claimed that the satisfaction piece was intended for a full execution of the agreement, and, therefore, the ' defendant Callaghan, as surviving assignee, is estopped from setting up its invalidity. It is not pretended that such satisfaction piece in fact, or legal effect, was sufficient to discharge the prior judgments of record. Such pretense would be inconsistent with the purpose of the present action. But it is claimed to be evidence of actual payment, and entitled to the same effect as a release under seal. The case, however, does not go far enough to give to the satisfaction piece the- effect of a record. The docket was canceled and discharged, (2 R. S. 362, § 22,) but the satisfaction piece was not entered upon the judgment roll. Until that was done, there was nothing in the whole proceeding which partook of a record, (Lownds v. Remsen, 7 Wend. 35,) so as to operate as an estoppel upon any of the parties. ¡Nor can there be given to it the effect of a release under seal. It is not a record, and is -not under seal, but is a mere authenticated acknowledgment of satisfaction, which by ■force of the statutes authorizes the docket to be canceled and discharged, and like any other receipt is open to inquiry. It seems to me, therefore, that even if the evidence had supported the finding of the learned justice, that the satis *75 faction piece was intended as a satisfaction of the entire claim, there would yet be no equity requiring the surviving owner to discharge the prior judgments. A payment of two hundred dollars as a satisfaction of a judgment of upwards. of two thousand dollars, is too inadequate to found any equity upon in favor of the judgment debtor. I have not been able to discover any reason .for making Hendrickson a party, or for directing any judgment against him. I think the plaintiff cannot have any part of the relief he asks for in his complaint, and that the judgment is therefore erroneous and should be set aside, and a new trial granted, with costs of the appeal to abide the event.
Robertson, Oh. J.
No good reason has been adduced in this case for not considering all the right acquired by Callaghan & Miller in Hendrickson’s claim, by his assignment to them of merely the first judgment, as absolutely terminated by the reduction of that judgment to a mere security for such claim. That reduction was binding on them, because they had notice of, and appeared on, the application for the purpose. It took the claim out of any merger in the judgment, as a debt of a higher nature, and left the latter a mere collateral security, not an adjudication or recovery. (Mott v. Union Bank, 8 Bosw. 591. Ford v. Whittridge, 9 Abb. Pr. 416. Miller v. The Eagle Life and Health Ins. Co., 3 E. D. Smith, 184. Pierce v. Thomas, 4 id. 354.) The assignment itself did not, in terms, transfer the claim, but merely the judgment. Such an assignment of a mere security, without a transfer of that which it is intended to secure, has been uniformly held to be nugatory, and not to create any interest in the debt secured. It, therefore, became a perfect nullity, having the external form of an assignment of a debt, hut conferring no rights. (Merritt v. Bertholick, 36 N. Y. Rep. 45, op. Parker, J. and eases cited.) Of course, as Hendrickson’s attorney, Miller could not discharge the judgment for less than the amount *76 due. (3 R. S. 5th ed. 641. § 25. Lewis v. Woodruff. 15 How. Pr. 539.)
Assuming, however, that the defendants are bound by the acts of Miller, the nature and purpose of the present action are not very clearly defined. It, of course, assumes to be equitable in its character, and seeks to compel the defendants to discharge the first two judgments against the plaintiff, and thereby the' claim which was merged in the second judgment. The only ground alleged in the complaint on which that relief is sought, is the acceptance by Miller of a small sum of money, paid by the plaintiff’s counsel to him, in full payment and satisfaction of the whole claim. The pleader, however, having been fully aware that, by itself, such acceptance would not discharge the claim, being a less sum paid in satisfaction and discharge of a greater; (Harrison v. Close, 2 John. 448; Seymour v. Minturn, 17 id. 169; Bleakley v. White, 4 Paige, 654; Lewis v. Woodruff, ubi sup.; Lynch v. Welch, Seld. n. 13; Ward v. Broomhead, 14 L. and Eq. 502; Crafts v. Wilkinson, 4 Ad. & El. N. S. 5, 74,) and that something more was necessary to create an equity to enforce the agreement supposed to arise out of such a stipulation, has added, as the sole ground for so enforcing it, an allegation' that the satisfaction piece actually executed by Miller, “ was intended as a satisfaction of the entire claim, * so given by * Miller, and received by” the plaintiff’s then counsel (Beers.) And upon the efficacy of that fact, in creating an equitable right by the plaintiff to have the supposed agreement to discharge the whole claim enforced, the whole of this case turns.
It is not easy to class a ease, with only such features, under any known head of equity jurisdiction. It cannot be sustained as an action to enforce specific performance of a written contract, with an oral variation of its terms, (see 1 Story's Eq. Jur. § 161,) because the whole contract itself was only oral, and not binding on the parties, for want of a proper consideration. Nor is it claimed to have, been an *77 oral contract, so partly executed as to make it a fraud not to complete it. (Price v. Dyer, 17 Vesey, 364, per Sir Wm. Grant) There might, also, be some room for an equity in ordering a reformation of the satisfaction piece actually executed, if it were such an attempted execution of such contract, that nothing but such a mistake as would warrant a reformation of that kind, prevented it from actually accomplishing the purpose of such a contract, and making it binding upon the defendants. But no such relief is claimed, no such mistake is alleged, and the only ground presented is that such satisfaction piece, in the very form in which it was giv'en, “ was intended as a satisfaction for the whole claim,” and was so given and received. This, of course, precludes any idea that any other instrument was intended or agreed to be executed, and particularly any such satisfaction pieces, as it is sought in this action to compel the defendants to execute. There is, also, no pretense that the satisfaction piece executed was not given in the precise form in which the parties intended it should have been given, nor was a particle of evidence, tending to prove the contrary, ever offered. Oil the contrary, the plaintiff’s then counsel (Beers) testified, that he told Miller he would pay him the money, if he would execute that satisfaction piece, and that he would not, and did not, pay him the money, until the particular judgment, which it was given to satisfy, was satisfied of record by it. This court will not, therefore, interfere with such' an instrument, so drawn and executed, precisely in the form in which it was intended to be. (1 Story’s Eq. Jur. §§ 111-120. Willard’s Eq. Jur. 69. Hunt v. Pousmaniere’s adm’rs, 1 Peters, 13, 17. S. C. 2 Mason, 342. 3 id. 24. Leavitt v. Palmer, 3 N. Y. Rep. 19.)
The only question, therefore, left is whether ah instrument, having a definite legal effect, such as the satisfaction piece in question had, can, by force of the mere intention of the parties, proved even in the strongest manner, be made to have a more extensive one. If so, a mere receipt, and almost a blank piece of paper, deliberately delivered in *78 order to have a certain effect, could be made as effective for all purposes as a release under seal. It is not alleged that such satisfaction piece, in its present_ form, was executed merely in part performance of any prior agreement, but that it was intended as an entire performance. If so, the prior agreement, as a mere negotiation, would have been merged in it. Whereas, the real, final and only contract, as testified to by the plaintiff’s then counsel, (Beers,) was merely to give that satisfaction piece, and put it. on record, in return for the money paid. It is difficult to discuss such a question as that now presented, without either encountering the difficulty of seeking to remedy a mistake of law, or making it one of those which arise from the legal principles upon which parol evidence to explain, alter or modify written instruments is rejected. It is, therefore, clear that no relief can be given on the grounds asked for.
The mere delivery of the satisfaction piece, in the form in which it was executed, or even in any form, could not operate to make the supposed oral contract of Miller, as set up in the complaint, binding, since it was not void merely because it was not in writing, but in consequence of its want of a consideration to support it. Nor do I see how the payment, by the plaintiff, merely of money already due by him, and the satisfaction by Miller of a judgment for merely part of that debt, can create any equity to have such void contract enforced. A party must part with something, which he was not bound to part with, or, at least, be incapable of being put in the same position as he was in before, in order to make a refusal by another to perform a contract with him otherwise void, such a fraud upon him, as to call upon a court of equity to enforce it. The plaintiff neither parted with any thing, nor lost any advantage previously possessed by him.
Even, however, if this court could reform the satisfaction piece actually given, or its delivery in partial execution of an oral contract to satisfy a claim for one tenth of its amount, .could confer on a court of equity jurisdiction to *79 enforce such contract, the exercise of jurisdiction in either case must be, to a certain extent, a matter of discretion, (1 Story’s Eq. Jur. § 742, and oases,) and founded only on the clearest and most irrefragable evidence of the facts on which it rests. In case of mistake, the denial of one of the parties, in his answer, as to his intention, is considered as fatal, (Mortimer v. Shorhall, 2 Dr. & W. 363; 374,) unless the proof to the contrary greatly preponderates. (Pitcairn v. Ogbourne, 2 Vesey, 375, 379.) The plaintiff has successfully avoided that difficulty, by waiting until after the opposite party (Miller) died, which took place two years after the transaction, and by waiting five years before beginning his action, has obtained every benefit he could by the lapse of time, by the indistinctness produced in the memory of the counsel whom he then employed, and the loss of any adverse testimony which the defendants might have had. Ho excuse is offered for such laches. A party seeking specific performance is bound to show himself ready, prompt and eager to perform it. (1 Story’s Eq. Jur. § 776, and cases cited in note 4.) Relief, demanded after a long lapse of time, with no explanation of the delay, or after gross laches, will not be administered. (1 Fonbl. Eq. b. 1, ch. 6, § 2, n. e.) Ho equitable circumstances are presented in this case to call for the relief demanded. A full and adequate consideration is always deemed necessary, (Sugd. on Vend. ch. 4, § 2, 191, 7th ed.; German v. Machin, 6 Paige, 288;) yet the plaintiff has neither averred, nor undertaken to prove, that the sum paid by him was all that he was able to pay on account of the claim of Hendrickson against him, and that more could not have been collected by the attorneys of the former. I think, therefore, the unexplained lapse of time, the death of the only other party to the transaction, the nature of the contract, and the absence of all equities for enforcing the contract, would have been a sufficient bar to any equitable relief, had there been.no other.
There is (besides, if it be necessary to pass upon that question,) an entire absence of evidence to support either *80 allegation in the complaint, that, as to the acceptance of the money paid by the plaintiff - in satisfaction of the first two judgments, or that, as to the delivery of the satisfaction piece with the intent thereby to satisfy them, unless the absolute silence, at the time, of the parties by whom the settlement was made upon the subject, is to be considered as equivalent to their establishment, merely because the plaintiff probably desired to satisfy the whole claim by paying one tenth of its amount. . It is to be recollected that Miller, one of the parties to the negotiation, is dead, and that over five, and nearly six years elapsed before the other party was called upon to testify. In all the conversations detailed by him, neither the name of Hendrickson, nor his claim, nor any judgment but the last one on appeal is in any way referred to. Three times, in answer to different questions put by the counsel on both sides and the court, he stated such conversation, (or its substance,) which showed' for what alone the money was paid. He referred to but one judgment and one satisfaction piece, for which it was to be paid, and was paid. Eot a word was uttered as to satisfying any thing else, and the money was paid, the moment that was satisfied of record. It is utterly immaterial whether both the agents who arranged the transaction believed that .such satisfaction piece discharged all claim or not, provided they said nothing on the subject. Both being lawyers, they may fairly be presumed to have known something of the law, as well as the force of the language used by them in conducting the settlement. It was urged on the argument, that the plaintiff must have intended to get more than satisfaction of the last judgment only, because he paid more than was due'. That may be so, but his agent never said so. The same argument is equally good for the defendants, that Miller did not intend to take one tenth of a judgment which must have been secured on the appeal, in full, for it. It was also urged that the plaintiff’s then counsel (Beers) informed Miller that his brother told him he would give $200 to get rid of “ the whole thing.” Eothing *81 in such conversation, as testified to, or said before or after it, or any allusion by either party, explains what was meant by “the whole thing.” At all events, nothing was even remotely said or done about getting rid of the prior judgments if they were what was meant, and the plaintiff waited five years, (although his then counsel must have known he had not got rid of them,) before he attempted to do so. Certainly, moreover, nothing was said or done to show in the most remote way that the satisfaction piece was intended to do any thing more than satisfy the judgment named in it, and therefore the second of the material facts, and the most essential of the two, to the plaintiff’s case alleged in the complaint, falls to the ground. I am reluctantly, therefore, compelled to differ from my learned associate, before whom this case was tried, in his findings of fact, wherein he finds that both such facts were proved.
The conduct of the plaintiff’s former counsel on the occasion referred to, might be reconciled with the plaintiff’s present claim, by supposing that the former imagined that the satisfaction of the last judgment virtually in law satisfied the other two, and that it was overlooked by Miller, and that by confining his negotiation to that, he would obtain what the plaintiff desired, without awakening the attention-of the latter, and the docket of that judgment might possibly have led him into that mistake. But it is hardly possible for a lawyer who examined the judgment roll to think so, as the only adjudication contained in it is an affirmance of the judgment; there is no award of a recoveiy in it of any thing, not even of the costs of appeal. The sums mentioned seem to be inserted only to identify the judgment, and are certainly not awarded by it. Miller might have explained, if living, whatever is irreconcileable or mysterious in the transaction, if there be any such thing, but the plaintiff has - prudently waited until his lips were sealed in death, and we are left to make the best explanation that can be made.
It is, besides, not a matter entirely free from doubt, whether in the absence of all evidence of the plaintiff’s *82 inability to pay, Miller had authority to agree to accept one tenth of the claim in discharge of the whole. If the evidence rejected had been admitted, it would have shown him a mere mortgagee or pledgee and trustee for Hendrickson of his equity of redemption. (Hawks v. Hinchcliff, 17 Barb. 492.) If he had transferred it to a stranger, he would have been liable for the full amount, (Id.) and there seems to be no good reason, why he could release the plaintiff for less than he could pay, as the latter was not a purchaser for a valuable consideration, since he parted with nothing he was not bound to pay already.
But, for the reasons already given, I concur in reversing the judgment, with costs to abide the event.
Barbour, J. dissented.