The opinion of the court was delivered by
Nicholls, C. J.
Plaintiffs allege that at a public sale made by Baumgarden & Fredericks, auctioneers, on the 25th of January, 1893, certain property described in their petition was adjudicated to James Burns for the price of $2200; that they are the owners of said property and that they tender a good unencumbered title to said adjudicatee, but that he refuses to accept the same and to comply with the adjudication. They pray that he be cited and that they have judgment ordering him to comply with the adjudication and pay the price thereof, and on his refusal to do so within ten days from judgment that they have execution against him for $2500, with interest from January 25, 1893, and costs.
*877 Defendant pleaded first the general issue — further answering he said “ that the property described was duly exposed at public auction and was adjudicated to him at the price and sum of $2200 as the last and highest bidder. That a title was offered him to said property, but he specially denied that the same was clear and unencumbered for the reason that Mrs. Elizabeth Schneider, one of the vendors, was married to one Andrew Schneider, who died on the 8th day of November, 1890, leaving separate and community property in the parish of Orleans, and leaving a minor child, Antonia Schneider, aged about eleven months, being the issue of the marriage between him and said Elizabeth Schneider. That the succession of said Schneider was opened in the Oivil District Oourt for the parish of Orleans; that an inventory was taken which showed the said minor’s interest to amount to the sum of $1440. That a certificate of said inventory was filed in the mortgage office of the parish of Orleans upon the application of Mrs. Schneider to be confirmed and qualified as natural tutrix of said minor, and said inscription became a general mortgage upon all the property of said Mrs. Schneider, and especially upon the piece referred to, for the amount shown by said certificate, thereto remain and act as such until the final settlement between Mrs. Schneider and her said pupil.”
“ That Mrs. Schneider has illegally and wrongfully caused said minor’s mortgage to be nominally canceled and erased from the books of the recorder of mortgages, and notwithstanding said illegal and wrongful cancellation said minor’s mortgage remains in full force and effect, and the property tendered to respondent is liable under said mortgage to secure and make good to said minor whatever sum. or sums which may be due to said minor upon final settlement with her tutrix. He therefore prayed that the demand of plaintiffs be rejected.”
The case was tried upon an agreed statement of facts, which was as follows:
1. Mrs. Elizabeth Schneider filed an attested account which is signed by the under-tutor and which was duly homologated by the udgment of the court. This account shows that the tutrix owed the minor nothing, the succession of Andrew J. Schneider being insolvent.
2. Mrs. Elizabeth Schneider took a rule upon the under-tutor and the recorder of mortgages, alleging the fact as herein stated in No. *878 1 of this “ statement of facts ” to show cause why the inscription in the mortgage office resulting from the filing of the clerk’s certificate ■ of the amount of the inventory should not be canceled, and the rule was made absolute and the inscription canceled.
■3. The paternal grandmother of the minor is aged, and when she dies there will probably devolve upon the minor an inheritance amounting to about $ 1000.
The District Court rendered judgment in favor of plaintiffs against defendant as prayed for by them and defendant has appealed.
The proposition contended for by the plaintiffs is that if at any period between the appointment of a tutor and his discharge at the termination of his trust, he should file an account which after due proceedings would be homologated contradictorily with the under-tutor, by which it would appear that at the date of filing and homologation there was nothing due by the tutor to his pupil, and nothing for which he was then responsible, the tutor would be authorized to obtain a subsequent decree (on proceedings also taken contradictorily with the under-tator) for the erasure from the mortgage records of the inscriptions which up to that time evidenced a mortgage in favor of his ward, and a judgment declaring the non-existence of any mortgage on his property. That a decree to that effect would enable the tutor to sell his property, and a purchaser from him to acquire his property free from the minor’s mortgage.
The proposition is not sustainable in law. It rests upon false premises and false assumptions.
In the first place the account which is rendered by a tutor pending the tutorship, and which may be homologated contradictorily with the under-tutor, is not a final judgment and does not definitively fix the situation or condition of affairs even up to the date at which it is rendered. It is at best only prima facie correct, and is subject to be reopened by the minor when he becomes of age and is subject to amendment or correction to the full extent of error.
In Stafford vs. Villain, 10 La. 329, this court said: “Tutors under an order of the Court of Probates must, and without it may, exhibit an account of their administration and the court may make certain orders thereon, but nothing authorizes it to homologate such accounts so as to render them conclusive and binding on the minor, for the law gives to the latter the right until the expiration of a certain delay after he becomes of age to examine and contest all the ac *879 counts of his tutor. The court, therefore, can in no case relieve and discharge the tutor from his responsibility.”
The first error in plaintiff’s position is in ascribing to a provisional account homologated during the tutorship the effect of determining absolutely the relative position of tutor and ward at any given fixed period.
The next error is in assuming that the inscription of the certificate of the district clerk, furnished by him in compliance with Art. 3351 of the Oivil Code, showing the amount of the minor’s property according to the inventory on file in his office, operates a mortgage in favor of the minor for the amount therein stated, to secure the faith - ful administration of the tutor for the property therein stated, and that upon showing that that particular property or money has been legally expended or accounted for, the mortgage (being a secondary or accessory obligation for that particular sum or property), falls and disappears, leaving the future rights of the minor to be secured by a new inscription as to their existence and as they arise, to be made by the tutor or under-tutor.
It has been repeatedly held by this court that the legal mortgage of the minor was not for the accounting of any particular sum of money or property, but for his faithful administration during the whole period of the tutorship. Speaking of this general mortgage, the court, in Barnard vs. Erwin, 2 Rob. 407, said:' “A general mortgage, says the Code, is that which binds all the property present and future. A special mortgage is that which binds only certain specified property. A mortgage may be stipulated for the fulfilment of any obligation whatever, even for the completion of an act. It may be given for an obligation which has not yet risen into existence, as where a man grants a mortgage by way of security for endorsements which another promises to make for him. It was clearly the intention of the Legislature to secure to the minor the faithful administration of the tutor up to the moment of his final discharge, and therefore the amount secured by the mortgage is not necessarily to be ascertained at the moment the mortgage was executed. If other sums should come into the hands of the tutor the property mortgaged would stand as security. The amount found due by a settlement in the Court of Probates during the minority of the pupil is not conclusive upon him. It may be examined into afterward on settling the tutorship and rendering a final account. It was as clearly the duty *880 of a faithful tutor to correct such an error as was discovered in this case (an error in the tutorship account) as it would be to recover from a third person the same amount discovered to be due. In both cases the sum found to be due is the property of the minor, and its administration and final payment to the pupil at his age of majority are secured, in our opinion, by the mortgage in question; ” and in Holmes vs. Henken, 6 Rob. 53, the court said: “ The mortgage of a minor can be enforced against a tutor only at the termination of his functions in one of the modes provided for by law.”
In Skipwith vs. Glathary, 34 An. 33, the court, discussing the effect of the Constitution of 1868 upon minors’ mortgages, said: “It now becomes necessary to determine whether the general mortgage resulting from the registry of the inventory extract secures all rights of the minors as will those in existence at the date of the inventory and therein specified as those accruing thereafter. * * * The convention did not propose to destroy existing lavs and jurisprudence on the subject matter, but merely to render express a mortgage which was previously tacit or occult, the registry being intended solely to notify third persons of the existence of the tutorship and of the eventual liabilities of the tutor at the end of the tutorship in order that when contracting with the tutor they might be on their guard. The requirement of the registry was intended for the protection not only of third persons but also of minors, but not beyond the amount so recorded in any event, except by a new or additional inscription. The law has always been and is that minors have a legal mortgage upon the property of their tutors from the day of their appointment until the liquidation and settlement of their final account. C. C. 3314.
“That mortgage now to exist must be recorded and takes effect against third persons only from the time of inscription. The registry does not liquidate the amount appearing on it, but warns such parties that on a settlement with their tutors the minors’ claim may rise to the amount stated in the registry. The mortgage formerly existing without registry in favor of minors has been held to cover not only amounts due and the liabilities of the tutor at the time of his appointment, but also the rights of the minors accruing subsequently, the mortgage being allowed as a security for the tutor’s administration from the time of qualification and continuing until *881 the liquidation and settlement of their account, when it is ascertained what amount is due the minor.
“ The mortgage which springs into existence at the date of the tutorship and of the registry of the certificate or bond has this remarkable feature, that it is assimilated to and operates like the conventional mortgage given to secure obligations which have not yet risen into existence (R. O. O. 3292), and affects third persons who have had knowledge of it, so as to subject property encumbered by it when it is necessary to do so for the satisfaction of the rights of the minors as liquidated and found at the end of the tutorship.”
We think it beyond question that the mortgage resulting from the inscription of the certificate of the clerk was not intended by the law-maker to represent simply a debt then due to the minors, but was to secure up to the amount mentioned the faithful administration of the tutor and to cover his eventual liability when the tutorship shall terminate and a settlement with his ward shall be made. Succession of Kuntz, 34 An. 855.
We are of the opinion likewise that from the date of the inscription up to the closing finally of the tutorship account, the minor’s mortgage up to that amount will strike all of the immovable property of the tutor owned by him during the tutorship, whether it was acquired before or after the receipt by him of particular funds, and whether at the time of that receipt he was still the owner of the property or had already sold the same.
What we here say does not of course extend to cases in which the tutor has been permitted to restrict the legal mortgage to specific property by the giving of a special mortgage. Oases of that kind would fall under the operation of the statutes providing for and regulating them and would not be controlled by general principles.
We can only apply such rules to cases before us whose actual facts fall under the statute. The proceeding is statutory, and we can not act outside of the. precise terms of the law. We can not reason or act by analogy. When, therefore, the plaintiff argues, as we understand her to argue, that, had the account, which in this case has been homologated, shown a balance in favor of the minor of $50 to $75, she could have applied for and obtained a decree for the substitution for the legal mortgage on all her property of a special mortgage on particular property, and limiting the amount of this special mortgage to the small amount as shown by a present liquidation of the minor’s *882 affairs, and releasing the balance of her property from mortgage, we simply answer that whilst that may be true for the reason that ita lex seripta est', and we could point to the source of our authority for so doing, her argument fails for the reason that she has not in fact done the thing from which she argues, and we know of no law which would justify us in entirely releasing or declaring entirely released, prior to the end of the tutorship and final settlement, the legal mortgage on a tutor’s property resulting from his tutorship.
Even in cases where by law, in consequence of á substitution of a special mortgage on specific property for the general mortgage of the minor on the balance of the tutor’s property, the court is authorized to release all but the property specially mortgaged from the minor’s mortgage, its decree would have to conform in its terms to the wording of the law, and nothing in the law would justify courts in declaring the legal mortgage of the minor entirely released. The actual result of a decree properly rendered would in each case have to be governed by its own facts.
There is no inconsistency in the legal mortgage and the special mortgage coexisting on the specific property specially mortgaged. See Barnard vs. Erwin, 2 Rob. 407; Gurlet vs. Jure, 15 An. 417; Fleetwood vs. Bordis, 19 An. 56; McDaniel vs. Guilory, 23 An. 544; Isaacson vs. Mentz, 33 An. 595; Skipwith vs. Glathary, 34 An. 33; Succession of Kuntz, 34 An. 854.
We have alluded to the radical error which plaintiff has fallen into as to the conclusive character of tutorship accounts homologated during minority. As we have seen, they are subject to revision and correction up to and after the majority of the pupil.
When so corrected the law-maker contemplated that the minor, now come of age, should find in full force, standing as security for correction of this error, the minor’s mortgage, given for the faithful administration by the tutor of his trust from its commencement to its end. Barnard vs. Erwin, 2 Rob. 407.
The defendant is not called upon to take any risks in this matter.
If plaintiff desires to have this particular property declared released from mortgage it is possibly in her power to do so by giving the special mortgage, on the right to give which, she argues to her conclusions.
*883 As matters stand we are not authorized so to declare, nor was the -district judge. Stafford vs. Villain, 10 L. 329; Bordis vs. Fleetwood, 19 An. 56.
For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff’s demand be and the same is hereby rejected at her costs.
Rehearing refused.