Munday vs. Kaufman.

---

No. 12,051.

CORNELIUS P. MUNDAY VS. LEOPOLD KAUFMAN.

Notwithstanding the proceedings of a family meeting recommending a sale of succession property to pay debts is approved and homologated by the judge, same does not, in any manner, impair the validity of a contemporaneous order for the sale of same property, which is made by the same judge.

It is a well settled principle of jurisprudence, as well as a well recognized rule of property, that a purchaser at a sale made at public auction, in pursuance of an order of court, is not bound to look beyond the decree in order to ascertain its necessity.

He is bound to ascertain that the court had jurisdiction to grant the order; but finding that it has, the *truth* of the record, in other respects, may be assumed.

A PPEAL from the Twelfth Judicial District Court for the Parish of Calcasieu. *Fournet, J.*

*Williams & Sugar* for Plaintiff, Appellee.

*S. D. Read* and *Arsène P. Pujo* for Defendant, Appellant.

Argued and submitted February 11, 1896.

Opinion handed down March 9, 1896.

Rehearing refused March 23, 1896.

The opinion of the court was delivered by

WATKINS, J. This is an action for the rescission of a judicial sale on the charge of nullities alleged to have existed in the proceedings leading up to the sale, as that of the property of a minor; and the defence urged against it is the protection which is afforded an adjudication regular in form and founded upon an order of court, which has been granted for the sale of succession property for the payment of its debts and charges.

*In limine* the defendant tendered an exception to the capacity of the plaintiff to institute this suit, as an emancipated minor, charging that he was not *legally* emancipated.

He was emancipated by an authentic act duly executed by his father on the 19th of June, 1891.

That act was executed in pursuance of the provisions of the Revised Civil Code, Art. 336, which declares that "the minor, although not married, may be emancipated by his father * * when he shall have arrived at the full age of fifteen years," this emancipation to be evidenced by a public act.

*Per contra*, defendant's contention is that at the time the act of emancipation was executed, the plaintiff's father was without power to exercise marital authority because the guardianship of the minor had been by a decree of divorce transferred to the plaintiff's mother, who had intermediately died, and that subsequently another person had qualified as dative tutor for the minor.

The act of emancipation appears to be regular in form, and it was executed by the father of the minor, who was at the time nearing the age of majority. No steps had been taken looking to the revocation of the act. Under this state of facts we think it should be recognized and given full force and effect in the present proceeding. Had the mother lived, and were she in court asserting an adverse claim, the case might be viewed in a different light. But the alleged invalidity of the act having been interposed by a stranger, for the purpose of defeating the claims and pretensions of the minor, who founds action upon it, can not be maintained.

In the Succession of Gaines, 42 An. 699, we entertained a similar view of a similar question. Richardson vs. Richardson, 38 An. 639.

## II.

From a judgment in favor of the plaintiff the defendant has appealed.

The statement of defendant's side of the story is that plaintiff's mother obtained a judgment of divorce *a vinculo matrimonii* against his father, decreeing her the custody of the child, who was a minor. That she subsequently died testate in the parish of Calcasieu, bequeathing all her property, which was situated there, to the plaintiff as universal legatee, and appointing her brother, who resided in the adjoining parish of Vernon, executor and tutor. That the will was duly probated, letters testamentary ordered to be issued, and on the 1st of July, 1886, an under-tutor was appointed, and the executor filed his bond, and subscribed an oath as testamentary tutor, and received letters of executorship and tutorship.

That on 22d of July, 1886, the executor presented to the Court of Probates a petition which was accompanied by a statement of the assets and liabilities of the succession which had been approved by him up to that date; and he thereupon asked for an order to sell for cash a sufficient amount of property to satisfy the debts, and also "for the convocation of a family meeting to determine the terms of the payment of that portion of the price not needed for the purpose."

That such an order was granted, a family meeting was held on the same day, and it recommended a cash sale of all the property, the proceeding being subsequently homologated. That the entire property was sold on the 4th of September, 1886, and adjudicated to the

38

defendant for the price of fifteen hundred dollars, same being the full amount of its appraisement in the inventory of the succession.

On this statement his theory is that the representative of plaintiff's deceased mother was at one and the same time acting in the dual capacity of testamentary executor and tutor in obtaining the order of sale, and he assumes that it was necessary for the entire property to be sold in order to pay the debts of the succession of the testatrix, and ascertain the rights of his ward, and that his title is protected by the order of sale.

On the contrary, the contention of plaintiff's counsel is that the order of sale was not procured by the executor for the disposition of the property, as that of the succession of the plaintiff's mother, for the purpose of paying its debts; but, acting on the assumption that it was property which had devolved on the plaintiff as universal legatee under the will of his mother, the executor, in his capacity as such, caused a family meeting to be convoked for the purpose of advising with reference to the minor's evident interest and advantage in making a sale, and to suggest the terms and conditions of the sale in case it should be recommended.

That a sale made in pursuance of an order of court predicated upon the recommendations of a family meeting thus convoked, is not a succession sale to pay debts in the due course of administration; but that same was a tutor's sale, which was based exclusively upon the advice of a family meeting.

That the purchaser at such a sale is not protected by the order of court, but his title is open to all the objections of irregularity which may be suggested by an emancipated minor, and, in a litigation with the emancipated minor, the adjudicatee carries the burden of proving the validity of all the judicial proceedings leading up to, and the legality of the sale.

The illegalities plaintiff suggests are the following, viz.:

1. That the court had no power to grant the order for the sale of minor's property, and that the order granted was *ultra vires* and absolutely void.

2. That the testamentary executor had not the legal capacity to convoke a family meeting for the purpose of advising a sale of the property of the plaintiff, and that a meeting of the family thus convoked, as well as their recommendations, were illegal and void.

3. That Nathan S. Smart, who was appointed dative tutor under

the last will of plaintiff's mother, was not competent to qualify and act as tutor, because plaintiff's father was still living at the date of the death of the testatrix, thus depriving her of the legal capacity to appoint a testamentatary tutor at all, and the law fully vesting the right in the surviving parent to qualify and act as tutor.

4. That, in any event, the testamentary tutor was a resident of the parish of Vernon, to whose domicile the jurisdiction of a family meeting convoked in the parish of Calcasieu did not extend, and he failed to have his bond as tutor inscribed on the mortgage records of the former parish, and, likewise, failed to have an abstract of the inventory of the minor's property therein inscribed.

5. That no order of court or recommendation of a family meeting at any time fixed the amount of the tutor's bond or approved the same.

6. That the plaintiff's father filed an opposition to the appointment and qualification of the dative testamentary tutor, asserting his preference and better right to the appointment, and that the same was on file when the alleged order of sale was granted, and so remained undisposed of. until long after the sale was made, when it was withdrawn.

7. That the legal effect of all of the foregoing illegalities and irregularities was and is that the sale to defendant was made without the plaintiff—then a minor of nine years of age—being notified or made a party thereto.

Plaintiff avers that due notice was given to the public at the time of the adjudication of the illegality of the proceedings by the plaintiff's father, and that subsequently additional notice was given to the defendant after the adjudication and before the completion thereof by the payment of the purchase price.

He further represents that prior to the institution of this suit a legal tender was made to the defendant of the amount paid and interest so as to place him in default—not being at the time advised whether or not the proceeds of the sale had been employed in settlement of the debts of the deceased.

It would serve no useful purpose to make an examination in detail, into all the various charges of nullity which we have enumerated, as in our opinion the case must turn upon the view we shall take of the order of court upon which the sale was predicated; that is whether it was one directing a sale to be made of a minor's property to pay debts.

If it be viewed as an order of court for the sale of succession property to pay debts, there will be no occasion for the court to examine into or decide the complex questions plaintiff's counsel has presented with reference to the tutorship, or the nullities alleged to have resulted therefrom.

There is some obscurity in the proceedings, which must be analyzed and eliminated, in order to arrive at a correct conclusion on the subject.

It appears that on the 26th of June, 1886, Nathan S. Smart, who was designated in the will of Mrs. Louisa Munday as testamentary executor and tutor, filed an application for the probate of her will, the issuance of letters testamentary to him, and for the convocation of a family meeting "to deliberate generally touching the intererest of said minor, and to recommend a suitable person for the appointment of a tutor to the minor," a child of the deceased, and for the appointment of an under-tutor.

Upon this application an order was granted upon the same date directing that a family meeting be convoked for the purposes stated in the application; and in the same order an under-tutor was appointed who subsequently qualified.

An inventory of the property of the deceased was taken, the principal asset of which was the property in dispute, an improved town lot in the city of Lake Charles.

On July 1, 1886, the family meeting was held before the clerk of the District Court for Calcasieu, and recommended:

1. That Nathan S. Smart, of Vernon parish, Louisiana, should be appointed *dative testamentary tutor* to the minor in conformity to the last will of the testatrix.

2. That the sheep and cattle should not be sold, but that the remainder of the personal property shall be sold for cash.

3. That the immovable property should be sold for one-third cash on the day of sale, one-third in six months, and remainder in twelve months from the day of sale.

On the same date the will was probated, and letters testamentary and of tutorship were directed to issue to Nathan S. Smart in conformity to the terms of the will, upon taking oath and furnishing bond according to law; and, upon the same date, he gave bond as testamentary executor and tutor; and upon the following day he subscribed the oath required as testamentary executor and tutor,

and received letters testamentary and of tutorship, having caused an abstract of the inventory to be inscribed in the mortgage office of the parish of Calcasieu, and his tutor's bond likewise.

On the 9th of July, 1886, Dr. J. C. Munday, the father of the minor Cornelius Pearl Munday, filed an opposition to the application of Nathan S. Smart to be appointed tutor, claiming the right to be confirmed as natural tutor to his minor child. This opposition was pending on the docket of the District Court until the sixteenth day of December, 1886, when it was withdrawn. A final judgment was rendered and signed in open court on that day, appointing Nathan S. Smart testamentary tutor to the minor. Letters of tutorship issued to him on the third day of January, 1887.

On the 19th day of July, 1886, Nathan S. Smart, as testamentary executor, presented an application for an order to sell all of the property on the inventory. He alleged that he had approved claims to the amount of seven hundred and four dollars and three cents— that the personal property was not sufficient to pay the debts—that the real property was unproductive; that it was liable to deteriorate in value, and that there were no funds on hand to support and educate the minor. He prayed for an order authorizing him to sell the whole of the property. And for the convocation of a family meeting to deliberate generally touching the interests of the minor, to fix the terms of the sale, and to advise as to the disposition of the surplus of the proceeds of the sale after paying the debts and settling the succession.

The judge declined to grant the order as prayed for in this application. But did grant an order authorizing the executor to sell property enough to pay the debts and to settle the succession. Then proceeding with his order, the judge directed that a family meeting be held to deliberate generally as to the interests of the minor, Cornelius Pearl Munday, and particularly as to the terms and conditions of sale of such property as might remain after the cash sale already ordered; and as to the mode and manner of investing the residue of the funds after paying the debts.

This order was granted on the 19th day of July, 1886.

Under that order a family meeting was held on the 22d day of July, 1886, and in the *proces verbal* of their deliberations they said: "That it is to the manifest interest or said minor:

"1. In view of the fact that the personal property, as shown by

the inventory, only amounts to two hundred and twenty-five dollars ($225), and that the privileged and ordinary claims against said succession accepted to date, by the executor thereof, amounts to seven hundred and four and twenty-three hundredths dollars ($704.23); that all the property of said succession be sold for cash to pay said debts.

" 2. They further recommend that after paying said debts of said succession the tutor of said minor shall loan out at interest the cash balance, taking good personal and mortgage security for the money so loaned. Hardy C. Gill, under-tutor, being present during the deliberations of the family meeting, approves and ratifies their deliberations and findings, and recommends that the same be homologated and made the judgment of the court."

On the 26th day of July, 1886, the judge granted his order on said application, and ruled as follows: " Upon considering the foregoing application and the proceedings and deliberations of said family meeting, approved by said under-tutor for said minor, *there being no opposition thereto*. It is therefore ordered and decreed that the deliberations of the family meeting, held before A. M. Mayo, deputy clerk and *ex-officio* notary public for Calcasieu parish, Louisiana, on the 22d day of July, 1886, on behalf of the said minor, Cornelius Pearl Munday, be and the same are hereby approved and homologated; that all the property belonging to said succession of Louisa Smart, deceased, and mother of said minor, be sold for *cash*, and that after paying the said debts of said succession that the tutor of the said minor shall loan out at interest the balance realized from said sale, after paying said debts, upon taking good personal and mortgage security for the reimbursement of said money so loaned; and that a writ of sale issue accordingly to said executor of said succession or to the sheriff of said parish of Calcasieu requiring and ordering him to sell all of said property of said succession of said Louisa Smart, deceased, for *cash* after due and legal advertisement, and after complying with the forms and requisites of law."

From the foregoing it appears that notwithstanding Nathan S. Smart had been recognized by a decree of court as testamentary tutor for the minor, and had taken upon himself all of the *insignia* of that office on the 2d of July, 1886, he did not subsequently act as such in reference to the sale of the property in question, being influenced doubtless by the pendency of the opposition of the minor's

father claiming a better right to the tutorship. Consequently he sought to evade the force and effect thereof by petitioning in his capacity of executor for the sale on the 19th of July, 1886, and for the convocation of a family meeting to recommend the terms of sale —the sale having been made during the September following.

Upon careful consideration of all the foregoing proceedings we are of opinion that the order of court is rather to be regarded as one for the sale of succession property to pay debts than as one for the sale of the property of a minor in pursuance of the recommendations, of a family meeting.

The recommendations of the family meeting of date July 1, 1886, seem to have been abandoned, because a subsequent order of sale— the one under which the sale was actually made—was applied for on the nineteenth of that month and granted.

That application was accompanied by a statement exhibiting debts of the deceased and those against the succession, aggregating about seven hundred dollars, and showing no funds in the hands of the executor with which same could be paid.

The order which the judge granted directed the sale of all the property belonging to the succession for the purpose of paying its debts.

It is true that the petition praying for the order of sale also prayed for the convocation of a family meeting for the purpose of fixing the terms of sales, "and to advise as to the disposition of the surplus of the proceeds of the sale after paying the debts and settling the succession."

And it is also true that the judge granted the order as requested, and that a family meeting was subsequently convoked, and recommended a sale for cash "all the property of the succession" for the purpose of paying its debts, but the family meeting also recommended that the cash balance which should be realized at the sale; over and above the succession debts and charges, must be loaned at interest on good mortgage security.

Yet, notwithstanding the judge approved of said recommendations, he granted an independent order of sale of all the property to pay the debts of the succession, and he specifically directed that a writ of sale issue to the executor "requiring and ordering him to sell all of said property," etc.

The recommendations of the family meeting were unnecessary,

but they did not impair the validity of the order of sale made by the judge. They were mere surplusage.

It is a well settled principle in our jurisprudence, as well as a well-recognized rule of property in this State, that a purchaser at a sale made at public auction, under an order of court having jurisdiction of a succession, is not bound to look beyond the decree in order to ascertain its necessity.

He is bound only to ascertain that the court had jurisdiction, and, finding that it has, the truth of the record, in other respects, may be assumed. Webb vs. Keller, 39 An. 56; Fraser vs. Zylics, 29 An. 536; Herriman vs. Janney, 31 An. 280; Webb vs. Kellar, 26 An. 596; Linman vs. Riggins, 40 An. 761.

Taking this view of the proceedings there ought to have been judgment in the court below in favor of the defendant.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the demands of plaintiff be rejected, and that the defendant be quieted in his title and possession.

It is finally ordered that the · plaintiff be taxed with the cost of both courts.