Ingram et al. vs. Laroussini.

---

## No. 12,668.

### GEORGE INGRAM ET AL. VS. HYPOLITE LAROUSSINI.

A parish judge, in writing at the foot of the petition of a mother praying appointment as tutrix of her minor children the words: "Let the prayer of the petitioner be granted and let her be qualified as natural tutrix of the minors," follows the form usually employed by the probate court in granting orders for the appointment of tutors of minors.

Article 321 of the Civil Code, which declares: "In the several cases in which the tutor is not required by law to give bond, it shall be the duty of the clerk of the District Court of the parish in which the appointment (of tutor) is made, to furnish a certificate of the amount of the minor's property, according to the inventory on file in his office. This certificate must be recorded in the mortgage book of the parish in which the tutor resides and a certificate to that effect, signed by the recorder of mortgages, must be presented to the judge before he can make the appointment or authorize letters of tutorship to be issued," is intended as a protection to the interest of minors, and not an instrumentality by means of which they can enrich themselves at the expense of the creditors of their father, under whom they claim as heirs.

Where the succession of the father has been settled throughout, with the mother of the minor children of the deceased acting as its legal representative in her capacity as natural tutrix, and where. in the course of its administration, property has been sold on the application of such representative, and upon her truthful allegation that the succession was insolvent and that the property was specially mortgaged for an amount many times more than its value, and where such property has been adjudicated to parties holding promissory notes evidencing the entire purchase price of the property sold, who credit the succession with the amount of the bid, such sale will successfully resist an attack made upon it by the children of the deceased, claiming under him as his heirs based simply on the ground that their mother was appointed tutrix and had received letters as such in violation of Art. 321 of the Civil Code.

Where the probate court has granted an order for the sale of " all the property of a succession," a commission to sell, directed to the sheriff, which follows the wording of the order, is not null because it fails to give specific descriptions of the properties to be sold under the order in the body of the commission• The sheriff is authorized to have recourse for descriptions to certified extracts from the inventory of the succession on file in the court.

A sale is not attackable because the sheriff, in his *proces verbal* of a particular sale, annexes thereto a certified extract of the inventory containing the description of a particular piece of property and a printed copy of the advertisement under which the sale was made, and after detailing the various steps in the execution of the commission of sale in his hands, refers to the annexed extracts from the inventory and the printed advertisement as being descriptive of the property sold and adjudicated.

APPEAL from the Sixteenth Judicial District Court for the Parish of St. Tammany.   *Reid, J*

*Clay Elliott* for Plaintiffs, Appellants.

*Saunders & Miller (Walter H. Saunders* of Counsel) for Defendants, Appellees.

Argued and submitted December 28, 1897.
Opinion handed down January 24, 1898.

Defendant Laroussini is in possession as owner of certain property in the town of Covington which he acquired by purchase from the succession of Adam Thompson; Thompson himself having purchased the same at a succession sale made in the matter of the succession of George Ingram, on the prayer of the wife of said Ingram claiming to be the natural tutrix of the minor children issue of her marriage with said Ingram.

Plaintiffs as heirs of their father and mother bring this action against Laroussini and the succession of Adam Thompson, praying to be declared the owners of said property and put in possession thereof; to recover from the succession of Thompson the sum of twenty-eight hundred dollars, and from Laroussini, eight hundred dollars, for fruits and revenues of the property during the period of their respective possessions.   Plaintiffs couple with their petitory action an attack upon the judicial sale by which Thompson claims to

have acquired ownership, and upon that of Laroussini from Thompson. They declare that the former sale was absolutely null and void to the knowledge both of Thompson and Laroussini, and that they were both possessors of the property in bad faith. The attack on the judicial sale on the Ingram succession is made on the ground that their mother was never appointed, nor confirmed as their natural tutrix, nor was she authorized to stand in judgment for them or the succession of George Ingram, and on the further ground that even upon the hypothesis that she was their tutrix the formalities of law required for the divestiture of their title had not been observed, and they are the owners of the property as if the proceedings on which defendants rely had never been taken.

They allege:

1. That no certificate of the amount of the minor's mortgage was recorded in the mortgage book of the parish; that no decree of the court had ever been rendered appointing or confirming their mother as their tutrix, nor authorizing letters of tutorship to issue to her. That she had no authority to petition the court for a sale of their property on the proceedings mentioned.

2. That she was incapable of being their tutrix and acting as such, as she never took the oath required by law.

3. That the parish judge had no power to order the sale mentioned without the advice of a family meeting upon a petition presented by a turix appointed, and qualified as the law required; that no such petition was presented and no advice of a family meeting was asked or obtained.

4. That the commission under which the sheriff acted in making the sale did not describe any real estate, and said property was not described in his return.

Laroussini called the succession of Thompson in warranty through a curator *ad hoc*. Both defendants pleaded the general issue, maintained the validity of the sale in the succession of Thompson, and that from the succession of Thompson to Laroussini, and their possession as being in good faith. They detailed minutely the circumstances under which the succession sale was made; the condition of Ingram's succession, the steps taken in the matter of the appointment of plaintiff's mother as their tutrix, and the various formalities which were observed in the matter of the settlement of the succession. They averred that the property in controversy was, at the

time of the succession sale, in a dilapidated condition, and that both Thompson and Laroussini had, while holding and possessing the same as owners, placed valuable and expensive improvements thereon, which had greatly enhanced its value; that they had also paid a large amount of taxes upon the property.

The right and interest of the plaintiffs to attack the sale was denied, as it was averred that the succession of Ingram at the time of his death was utterly insolvent, and the property in question was for many times its value encumbered with special mortgages, among which was a special mortgage for a large amount which was owned by Adam Thompson at the time of the sale mentioned. The right of the plaintiffs to institute the proceeding was also denied, as no offer or tender had been made to return to the parties the amount of moneys which had been used in the payment of the debts of their father and mother, and which had enured to their benefit, or to reinstate the succession of Thompson in its position as mortgage creditor. It was averred that plaintiffs' rights were merely residuary, and they could take nothing from the succession until after its debts had been paid. Both defendants urged and claimed that should the succession sale made in the succession of Ingram be set aside that the mortgage claim held by Adam Thompson against the property and against the succession of George Ingram, and the community between him and his wife, should revive and be reinstated with interest on the claim and the right to attorney's fees in case of suit.

Defendant Laroussini claimed to be entitled, under his purchase from the succession of Thompson, to be subrogated to all claims which the latter held against the succession of Ingram. He also claimed that the mother of the plaintiffs, after the sale of the property to Adam Thompson, made a formal deed of transfer of the property to the purchaser, and that being a widow in community, entitled to one-half of the community property, the effect of said act was under any and all contingencies to transfer her one-half of the said property to Thompson, and that both she and her heirs were and are estopped from questioning his title to that extent. He prayed that plaintiff's demand be wholly rejected, but should the court rescind the sale, that under no circumstances it be not rescinded for more than one undivided half thereof. That should it be rescinded in whole or in part there be judgment reviving and declaring exigible the claim which Adam Thompson held against the

succession of Ingram and the community of acquets and gains between himself and wife for fifteen hundred dollars, with eight per cent. per annum interest thereon, from March 6, 1875, till paid, five per cent. on the aggregate amount of said principal and interest as attorney's fees and all costs of suit, and that same be decreed to be secured by special mortgage and vendor's privilege on the property sued for; that the same be sold to pay said sums and the proceeds of said sale be applied to pay said sums by preference and priority over all debts due by said George Ingram or by his succession or heirs; that there be judgment in favor of the succession of Adam Thompson for the sum of two thousand dollars expended by him in repairs, improvements and taxes on said property, and that he be subrogated to said claim and judgment in favor of said Adam Thompson against George Ingram, his succession and heirs. That should he be evicted from the property or any part thereof, there be judgment in his favor and against the succession of Thompson, his widow and heirs for the sum of twenty-seven hundred and fifty dollars, the price paid by him to the succession of Thompson for said property, and for one hundred and fifty dollars attorney's fees, and the further sum of two thousand dollars expended by him on said property for improvements and taxes.

The curator *ad hoc* prayed for the rejection of plaintiff's demand and contingently (as did Laroussini) for the reinstatement, revival and enforcement of the mortgage and mortgage claim of Adam Thompson against the succession of George Ingram and his heirs, and against the said property. He prayed judgment contingently against the said succession and heirs for the sum of two thousand dollars, amount expended by Adam Thompson in necessary repairs and useful improvements and taxes upon the property, and that defendant, Laroussini, be subrogated to all said claims so far as was necessary to protect him. That the demand in warranty of Laroussini against the succession of Adam Thompson, his widow and heirs, except as to said subrogation, be rejected.

The District Court rendered judgment in favor of defendant, Laroussini, and against the plaintiffs, rejecting the demand of the latter and rejecting the demands of Laroussini against the heirs of Adam Thompson as warrantors.

Plaintiffs appealed.

The opinion of the court was delivered by

NICHOLLS, C. J. We find in the record the following admissions of the parties:

### Civil District Court, Parish of Orleans.

GEORGE INGRAM
vs.
H. LAROUSSINI ET AL.

In order to save expense the facts in this case are admitted as follows:

1. It is admitted by the defendant in this case that no certificate of the minor's mortgage as shown by the inventory in the succession of George Ingram was ever recorded in the mortgage books of St. Tammany parish, where the succession of George Ingram was opened, or elsewhere.

Defendant admits that the plaintiffs in this suit are the only heirs of George Ingram and Catherine A. Ingram, his wife, both of whom died at the dates stated in the petition herein; and the defendants further admit that the property herein sued for is worth three thousand dollars. The plaintiffs herein file a complete transcript of all the papers in the record of the proceedings in the succession of George Ingram and Catherine A. Ingram, his wife, as now found in the clerk's office of St. Tammany parish, Louisiana, and the defendant admits that the transcript filed is a full and complete transcript of all the papers now in said record.

It is admitted that the rental value of the property herein sued for has been on an average not less than one hundred and fifty dollars per year since the sale to Adam Thompson, on April 4, 1877.

### FOR THE DEFENDANT.

It is admitted by the plaintiffs that George Ingram bought the property sued for on March 6, 1875, for the price of fifteen hundred dollars. That said purchase was entirely on credit, and that George Ingram gave to represent the said price of one thousand five hundred dollars, his two notes of seven hundred and fifty dollars, each bearing eight per cent. per annum interest from date until paid. That said act was recorded in the mortgage and conveyance book of the clerk's office of St. Tammany parish, as stated in the supplemental petition herein, and as shown in the copy of the act of sale which is filed in evidence.

2. It is admitted that as stated in the supplemental answer herein on June 19, 1876, Andrew Patton who was then clerk and representative of Adam Thompson, instituted executory proceedings on the above mentioned note for seven hundred and fifty dollars, maturing March 6, 1876, for the purpose of seizing and selling the property herein sued for, said proceedings being entitled Andrew Patton vs. The Succession of George Ingram, No. 1293 of the docket of the Sixth Judicial District Court for St. Tammany parish.

That an order of seizure and sale was signed in said proceedings, but that nothing ever was cone thereon.

3. Parties hereto admit that the copy of the act of sale of date April 4, 1877, by Mrs. Catherine A. Ingram to Adam Thompson is a true and correct copy of said act and that the said act was registered in the conveyance records of St. Tammany parish, as stated in the supplemental answer herein.

4. It is admitted by counsel for plaintiffs that the succession of George Ingram was insolvent to a considerable extent.

5. It is admitted that Judge James Thompson, who was the attorney of the succession of George Ingram, would testify that the debts stated in the certificate of mortgages of date April 3, 1877 (found in the transcript of the record of the succession of George Ingram), were due as stated in the supplemental answer herein, and that no creditor of said succession ever objected to the administration of the said succession by Mrs. Catherine A. Ingram as tutrix.

6. It is admitted that H. Laroussini, the defendant herein, purchased the property herein sued for from the succession of Adam Thompson for two thousand seven hundred and fifty dollars, and on the terms stated in the supplemental answer herein.

7. It is admitted that the average taxes on the property sued for from 1877 to date have been twenty dollars and fifty cents per year, and that said taxes have been paid by said Adam Thompson and the said H. Laroussini.

8. It is admitted that the necessary lessor's repairs to preserve the property herein sued for, and to keep it in tenantable repair from 1877 to date, amount to at least six hundred dollars, and were expended by the said Adam Thompson and H. Laroussini.

9. It is admitted that the enhanced value of the property resulting from the additions and improvements placed thereon by Laroussini is at least three hundred dollars.

We agree to submit case on above statement of facts and the copies referred to in the pleadings on January 26, 1897.

(Signed)        SAUNDERS & MILLER, *Attorneys for Defendant.*
CLAY ELLIOTT, *Attorney for Plaintiff.*
GEORGE E. WILLIAMS, *Curator ad hoc.*

On the 9th of December, 1875, the mother of the plaintiffs applied to the parish court of St. Tammany parish, praying that she be qualified as their natural tutrix. At the foot of her petition to that effect the parish judge wrote an order, of which the following extract covers all that is necessary to be copied for the purposes of this case:

" Let the prayer of the petitioner be granted, and let her be duly qualified as natural tutrix of the within-named minors, George and Margaret Ingram."

Appellant contends that this order is fatally defective as an order of appointment. It would have doubtless been better had the parish judge in direct terms declared that he then and there by his order appointed the petitioner (naming her) as natural tutrix of the minors mentioned, but the order is in the form ordinarily used in probate proceedings for the appointment of tutors, for the taking of inventories, for the holding of family meetings, and other similar acts. " Let an inventory be taken," " Let a family meeting be held as prayed for," is the usual language employed in acting upon applications of that character. Even in executory proceedings asking for a writ of seizure and sale to issue, it is customary for the order to read: " Let a writ of seizure and sale issue," instead of reading: " It is hereby ordered that a writ of seizure and sale issue."

We see no force in the objection raised. On the 10th of December the mother took an oath before the District Court in which she declared that " she solemnly swore that she would well and faithfully perform all the duties of natural tutrix of the minors George and Margaret Ingram, minor children of George Ingram, deceased, to the best of her (my) ability. So help her (me) God."

On the same day the District Clerk issued to her letters of tutorship in which it was declared that she had been appointed and qualified as natural tutrix; that she had complied with and fulfilled all the requirements of the law, and that all her acts as such were enti-

tled to full faith and credit. An inventory of the succession was made, but it was not recorded. In this inventory figured, fully described, the property which forms the object of the present controversy. On the 23d of February, 1877, the widow as tutrix of the minors filed a petition in which after alleging that the estate of her husband was very much in debt, that the assets were not sufficient to pay the same; that there were mortgages to an amount exceeding seven thousand dollars existing against the real estate, being many times more than the value thereof, and that the movables would not suffice to pay the privileges thereof, prayed for and obtained an order for the sale of all the property, real and personal, for cash. It is admitted that the recitals of the tutrix' petition were true. It appears that at that time the property in question was affected by a special mortgage and vendor's privilege securing the payment of two promissory notes representing the purchase price which the deceased had agreed to pay for the same; that Adam Thompson, through his clerk, had applied for and obtained an order for the seizure and sale of the property to satisfy his claim, he being the holder of either one or both of said notes.

This order was not followed up, but the widow and tutrix came forward and applied for and obtained the order referred to for a sale of all the property of the succession.

By so doing she waived the necessity of the various services upon her which the law would have called for under the executory proceedings had they been continued and carried on to completion. The sale took place under the *probate order with this order of seizure and sale still standing unrevoked though not yet executed.* Possibly Adam Thompson might have had legal ground of complaint of a sale of the property made through such an order, but we see no legal ground of complaint which these minors could urge on that account. Can it be said that the minors could receive, or did receive, any injury from the mere fact that the tutrix, instead of permitting the sale to be consummated as prayed for, with herself proceeded against as defendant in executory proceedings, should have herself, as tutrix, taken up the proceedings about to be carried into effect and caused them to be executed under probate, instead of ordinary jurisdiction. The same result would have been reached by either proceeding. The sale would have been made for cash by the sheriff, under either order, and we fail to see how the minors could have sustained any damage in the premises.

Ingram et al. vs. Laroussini.

There can be no question that if plaintiffs' mother was not their tutrix at that time (as they claim she was not), that Adam Thompson could have legally proceeded against a tutor *ad hoc*, who would not have been compelled to give bond, and that their title or interest (if any such they can be said to have really had) would have been legally divested without reference to the fact whether plaintiffs' rights were secured by mortgage or not, and without reference to the advice of any family meeting.

The relations of the minors to the property were, under the circumstances of this case, really nominal. They were heirs of their father, it is true, by effect of law, but they were beneficiary heirs, and their father's succession was insolvent. Their tutrix would not have been entitled, simply as such, to have administered the succession, without security, if the creditors had objected. Her administration, as tutrix, without opposition, did not increase the rights of these minor beneficiary heirs in this property beyond what they would have been had their mother been forced to apply for and had obtained an appointment as an ordinary administrator of the succession. Her administration was in the interest of the creditors, as matters stood, rather than in the interest of the minors. The minors would have been entitled had their mother been forced by the creditors (by reason of their being beneficiary heirs), to qualify as a regular administratrix, to receive only the balance which would have remained in the succession after payment of all debts. C. C. 1058. Time has not extended their rights so as to authorize them, without incurring any obligations whatever, to take away from their father's creditors that which they were justly and legally entitled to have applied to the payment of their claims. Plaintiffs' demands are utterly without equity. At the sale which they seek to have declared null, the holder of the vendor's privilege notes (representing substantially the rights of the vendor himself), by purchasing the property, simply regained the ownership of the property on which not one dollar had been paid, nor has been paid up to the present day, if the sale passed no title to the adjudicatee. Plaintiffs' proposition is that they can wrench this property out of the ownership and possession of the purchaser through the law, without the payment of a cent for it. The law works out no such result through force of a provision in a statute which was intended to protect the actual interests of minors, and not to enable them to enrich themselves at the expense of their

father's creditors. When a case is presented to us in which minors have been really aggrieved by the failure of the court officers or of their father or mother to have recorded the abstract of inventory, by the recording of which they would have acquired a mortgage on their tutor's property to secure the faithful performance by them of their duties, it will be time enough to pass upon the effect of an appointment of tutrix and of issuing of letters of tutorship to a tutrix without the recording prior thereto of the abstract of inventory which the law directs should be placed of record.

The order of the parish court directed the sale of all of the property of the succession, real and personal. This property belonged to the succession and its sale was covered by the terms of the order.

Plaintiffs complain that the *proces verbal* of the sale of the property does not contain a description of the same. It is true that it does not do so directly in the body of the *proces verbal*, but the sheriff annexed thereto a certified extract from the inventory of the succession and also a copy of the advertisement under which the sale was made, and having declared that he had done so, declared that he had advertised for sale according to law the property described in the annexed extract from inventory, and after reading the advertisement, had offered said property for sale; that after receiving various offers he had adjudicated said real estate described in said inventory to Adam Thompson for the sum of seventeen hundred dollars, being the owner of the first mortgage and vendor's privilege, amounting with interest to the sum of seventeen hundred and forty dollars, the said purchaser retaining the same in his hands, less the sum of forty-two dollars, cost of selling the said property.

In addition to this the tutrix and the purchaser appeared, on the 4th of April, 1877, before a notary public, and the former made a formal and complete deed of the property to the purchaser, fully and minutely describing it as it had been described in the advertisement and inventory under full recitals as to the facts and circumstances under which she made the deed. The purchaser and the defendant have been in possession of the property under the adjudication and deed ever since that date.

It would have been much better for the sheriff to have given a complete description of the property in the body of the *proces verbal* than to have described it by reference to annexed documents which

might have become detached and rendered identification difficult, but they were not in this instance detached, and there can be no question as to what property was ordered to be sold, what was advertised to be sold, and what, in point of fact, was sold to Adam Thompson. We think the objection raised to defendant's title on these grounds is without foundation. C. P. 690, 695. We think the District Court has dealt with the case according to law and the evidence and according also to equity.

The judgment appealed from is affirmed. .