Statement of the Case.
NICHOLLS, J.
John Keppel died in March, 1898, leaving a Widow and three minor children. His succession was opened on the 28th of that month through an application made by the widow for appointment as natural tutrix of the minors and for an inventory. An inventory which was made showed property estimated at $5,587, in which was included real property valued at $3,000. The whole of this property belonged to the community. The inventory was' duly recorded. The mother was appointed natural tutrix, and qualified as such in April, 1898. She subsequently forfeited the tutorship by contracting a second marriage with Frederick Judson.
Upon the petition of Henry Sellen reciting that fact, a family meeting was convoked for the purpose of recommending a dative tutor. That meeting recommended the appointment of Jacob J. Sellen without bond. The proceedings were approved and homologated. At the instance of Jacob J. Sellen a second inventory was taken on the 2d of January, 1903, and recorded. The only property inventoried was the same property which had been in *249 ventoried before, wbieb in tbe new inventory was appraised at $3,400. Jacob J. Sellen qualified as dative tutor.
On the 23d of January, 1903, as dative tutor, the latter presented a petition to the civil district court, in which, after reciting the fact of the taking of the inventory and the amount thereof, and describing particularly the real estate belonging to the succession, he averred that property was burdened with a mortgage in favor of L. R. Shanks, payable at the rate of $50 per month; that the total rental of the property was $45 a month, $65 of which was in arrears; that in order to meet the monthly payments the undertutor had for the past year advanced the sum necessary to make up the deficiency, but he was no longer able to do so; that the city taxes for the years 1901 and 1902 were past due and unpaid, and there were no funds wherewith to pay the same; that it was necessary that the property be sold in order to provide funds with which to pay the same and to educate and support the minors. In view of this petition and the affidavit thereto annexed, he prayed for the convoking and holding of a family meeting in the interest of the said minors to deliberate on the subject-matter of the petition to advise whether it would be advantageous to the minors that the property should be sold, and, if so, to fix the terms on which it should be sold. A family meeting was accordingly convoked and held on the 27th of January, 1903, under an order of court, which directed that Henry Sellen, the undertutor, be notified to attend. The family, having taken cognizance of the petition and order, declared that after mature deliberation and consultation, considering the property was burdened with a mortgage of $1,500, that the revenue was not enough to pay the monthly installments on the mortgage, that the city taxes for 1901 and 1902 and the state taxes for 1902 were unpaid, and that there were no funds wherewith to pay the "same, and that it was necessary to provide funds to pay said debts and to support and educate the minors, they unanimously recommended and advised, as being for the best interest and manifest advantage of the minors, that the property described be sold at public auction for cash. Henry Sellen intervened in the proceedings, and declared that he was of the opinion that the advice and recommendations of the meeting were in all respects conducive to the interests of the minors, and approved the same. The proceedings of the family meeting were approved and homologated by the court, and the property was ordered to ba sold at public auction for cash.
On the 10th of March, 1903, the property was offered at sale at public auction for cash by J. L. Onorato, auctioneer, and, Leopold Levy being the last and highest bidder, it was adjudicated to him for the price of $4,500. On the 17th of April, 1903, Jacob J. Sellen, representing as dative tutor the minor children of Keppel, suggesting the antecedent facts and that the adjudicatee, Levy, had thus far refused to comply with the adjudication, although a just and valid title had been tendered him, moved the court, and obtained an order to that effect, that Leopold Levy show cause why he should not comply with the adjudication made, and pay the price of adjudication, with legal interest from the date of the adjudication until paid. The mother of the minors intervened and made herself a party to this rule. In her pleadings she averred that the property sold was community property, and she was the owner in indivisión with her children of one-half of the same; that said property had, on the petition of the dative tutor of the minors, been ordered to be sold to pay the debts of the community; that it had accordingly been sold to Leopold Levy for the price of $4,500; that she approved of the proceedings at the time they were taken; that she tools cognizance thereof and made herself a party thereto, and agreed to execute in favor of Leopold Levy such deed as might be necessary to convey to him her inter *251 est in the property. She declared that - she joined in the rule taken by the dative tutor to compel the adjudicatee to accept the adjudication. She prayed that her motion be served upon Levy and upon 'the dative tutor of the minors. Levy excepted to the intervention, and the exception was referred to the merits.
Leopold Levy answered the rule. He admitted that the property was adjudicated by Onorato, auctioneer, for the sum of $4,500 cash, but he specially denied that any notarial act of sale signed by the legal representatives of the minors had been tendered to him, and alleged that the title of the said minors in said real estate had not been divested by reason of certain nullities, which he would enumerate, in the proceedings in the succession of John Keppel, their deceased father, including the order of sale rendered therein. He averred that the title offered was suggestive of future litigation, and he could not be compelled to accept the same. Further answering, he set up the following grounds of nullity, to wit:
(1) That there was no statement in the petition for the family meeting as to whether there were any persons living who were entitled, by law, to the tutorship — that is, grandparents. There was an allegation that there were no relatives competent to be members of the family meeting, other than a paternal uncle. That there was no declination on the part of the paternal uncle to be appointed as legal tutor to said minors.
(2) That the under'tutor of said minors never took the oath prescribed by law.
(3) That the allegations of the dative tutor praying for a sale of the whole property, and reciting that there was a mortgage against the property for the sum of $5,000, a large portion of which was due, and that other debts were due, without specifying what they were, was not sufficient to authorize and justify the sale of all of the real estate belonging to said minors.
(4) That prior to the adjudication of said property to defendant herein, the mother and natural tutrix had not filed an account. That shortly after the adjudication herein the mother and natural tutrix of said minors filed an account charging against the estate of said minors a lot of debts, among them a balance due on a mortgage note for $2,900, as would appear from that account. That there were some movable property, store merchandise, and other assets inventoried, which she (the natural tutrix) took to her account at the appraised value. That she also took the real estate, which had already been adjudicated for the sum of $4,500, to her account at the appraised value of $3,000. That this she had no legal right to do under any circumstances. That the minors were therefore brought in debt to her in the sum approximating $900.
(5) That the order obtained after the homologation of this account, ordering the recorder of mortgages to cancel the inscription of the minors’ mortgage against their mother and tutrix, would not .protect any one who took title to this property at this time on the face of the papers, and an adjudicatee cannot be compelled to take title built up in this way, where it is sought to eliminate the interest of the minors by an account like this.
(6) That the title was prepared by Mr. Martin Manion, notary public, purporting to convey property from the estate of John Keppel to Leopold Levy, defendant and adjudicatee, in which J. L. Onorato appears as auctioneer, in his capacity selling the property, which he had no legal right to do.
(7) That Mrs. Widow Keppel, now the wife of Ferdinand Judson, authorized by her husband, joined in this act of sale to convey whatever right, title, or interest she might have in and to said property, and she was also joined by the dative tutor in behalf of said minors conveying their interest. That defendant specially excepted to the intervention in said act of said Mrs. Josephine Blum, *253 wife of Ferdinand Judson, on the ground that there was no privity of contract between him and said Mrs. Josephine Judson; that his rights were fixed by the public adjudication.
Wherefore defendant prayed that after trial this rule be dismissed, that J. L. Onorato, auctioneer, be directed to return him the sum of $450, the amount deposited by him at the time of said adjudication, and for all costs and general relief.
The district court made the rule absolute, and adjudged and decreed that Leopold Levy, the defendant in rule, should comply with the adjudication made to him, and pay to the auctioneer the sum of $4,500, with interest at the rate of 5 per cent, per annum from the date of the adjudication until paid, and costs.
Levy appealed.
It appears that on the 20th of March, 1903, Jacob J. Sellen, as dative tutor of the minor children of John J. Keppel, suggesting to the court that the mother of the minors had been confirmed as their natural tutrix; that she had forfeited the tutorship by her second marriage without convoking a family meeting; that on the recommendation of a family meeting, whose proceedings had been approved and homologated, he had been appointed dative tutor of the said minor, and had qualified as such; that the said tutrix had never rendered to him an account of his administration of the succession of John Keppel and the minors’ interest — moved and obtained from the court an order that she should render to the court a full, fair, and perfect account of the tutorship of said minors.
The mother and former tutrix filed her account under this order of court. In this account she claimed there was due to her by the succession of her husband the sum of $910.
She averred that at his death he was en-' gaged in business as a retail grocer; that there were accounts due by him on account of the business; that she proceeded to pay the same out of the funds of the succession after she had qualified as tutrix and been placed in possession of said succession; that there was a debt of $500 due by her husband to L. K. Shanks, secured by mortgage on the immovable property, payable in monthly installments of $50; that she used the rents of the property, as far as the same would go, in paying the monthly installments, but they were insufficient for that purpose, as was shown by her account; that she was compelled to make advances from her private funds to pay part of the installments, also to pay insurance and taxes; that, having lost the tutorship by reason of her second marriage, she was entitled to a final settlement of her tutorship, and to a judgment against her children for one-half of the sum advanced by her in payment of the debts and charges of the estate. She prayed that her account be approved and homologated, and that she have judgment against her children for the sum of $450; that she be discharged from her liability as tutrix; and that the legal mortgage granted in favor of the minors and registered against her property be canceled.
Jacob J. Sellen, dative tutor of the-minors, and Henry Sellen, undertutor, accepted and homologated the account. After receiving evidence in support of the same, the account was approved and homologated, and the tutrix was by judgment of the court decreed finally discharged from all further trust and liability as natural tutrix, and the inscription of the clerk’s certificate in the recorder’s office was ordered to be annulled, canceled, and erased. This was accordingly done.
After the adjudication to Levy, the auctioneer, Onorato, caused a notary public to make out a deed of sale in which all the funds antecedent to the adjudication were recited, as were also a recital of the fact of the offering of the property at auction *255 and that the same had been adjudicated to Levy. After these recitals the auctioneer was made to declare that as such, and by virtue of the adjudication made by him, he transferred the property to Levy under the usual clauses. In this act as prepared, Jacob J. Sellen, dative tutor, and Mrs. Josephine Keppel (then Mrs. Judson), were made to appear and intervene, declaring they took full cognizance of the sale and transfer and approved the same in every particular. The auctioneer in the prepared deed acknowledged receipt of the price from Levy, and the dative tutor and Mrs. Keppel gave acquittance and discharge for the same to the auctioneer. Levy declined to sign this act and pay the price. The points urged in the syllabus of appellant’s brief are:
(1) The mother and ex tutrix, who is the widow in community, who administers the succession as tutrix, and upon her forfeiture of the office is replaced by a dative tutor, who continues to administer the succession, and who provokes the sale of the succession property as minors’ property, cannot thus destroy the minors’ mortgage on her undivided half of the property. Such a sale cannot be assimilated to an administrator’s sale to pay the debts of the succession. Schneider v. Burns, 45 La. Ann. 875, 13 South. 175.
(2) The minors’ mortgage operates on the immovable property of the tutor during the entire tutorship. Lyman v. Stroudbach, 47 La. Ann. 71, 16 South. 662; Schneider v. Burns, 45 La. Ann. 875, 13 South. 175.
(3) A vendee cannot be compelled to accept title to property which suggests future litigation.
(4) The undertutor shall, prior to his entering upon the discharge of his duties, take an oath before the proper officer that he will well and faithfully fulfill his trust. Civ. Code, art. 274.
(5) An act of sale of property owned by minors can only be signed by their tutor. The auctioneer under whose ministry the property is exposed for sale has no authority to represent the minors in this respect, and the tender of an act of sale of their property signed by the auctioneer is ineffectual both against the adjudicatees and the minors.
Opinion.
The first feature of this case which attracted our attention was the fact that the first of the two spouses to die was the husband, not the wife. It has been frequently decided that under such circumstances the settlement of the husband’s succession includes and carries with it the rights of the wife in so far as her community interests, at least, may be involved. Succession of McLean, 12 La. Ann. 222; Succession of McCan, 49 La. Ann. 974, 22 South. 225.
When Keppel died, leaving a widow in community and only minor heirs, the former (the widow), upon qualifying as natural tutrix of the minors, was authorized as such to administer the succession of the husband so long as creditors and legatees did not complain and interfere. Bryan v. Atchison, 2 La. Ann. 462; Ingram v. Laroussini, 50 La. Ann. 77-78, 23 South. 498.
If they should have complained, the succession could have been forced under administration, for, though the heirs and the widow in community are owners of the property of a succession in one sense of the word, their ownership is an imperfect one; that is to say, it is subordinated to the rights of the creditors, and sometimes to the rights of the legatees, to the extent provided for by law. The rights and remedies of the latter, however, are themselves to be exercised in the manner and form, time, place, and circumstances fixed by law. They are left, to a very considerable extent, to be controlled by their own volition, to be modified, waived, or renounced by their conduct or their own inaction. If they think proper to allow their *257 interest to be regulated and controlled by other parties, they are frequently estopped from raising any complaints.
We do not understand it to be in this state a matter of absolute necessity that a succession should under all circumstances be placed under administration, nor that it is required that the parties always taking charge of the affairs should always’ give bond. An executor may, for instance, legally administer without bond. The heirs accepting a succession under benefit of inventory have a right to administer it as such without security if no one objects. So, also, one heir (just as one joint owner) may take possession and administer for all, all consenting. Of course, parties so administering must keep within the bounds of their legal authority.
If it be true that Jacob J. Sellen, as dative tutor of the minor heirs of Keppel, was without legal right or authority as such to administer upon the succession of the husband and father as a whole, though the widow in community was present and acquiesced in the situation and no creditor complained; if it be true that he was necessarily limited and confined, under such circumstances, to an administration exclusively of so much of the succession as might represent the undivided interest of the minors in it — that is an end of this case, for under such circumstances the dative tutor could only have applied for and obtained an order for the sale of an undivided half of the property, - and any order of court authorizing and .decreeing ¿ sale beyond that proportion of the property would be null and void. An adjudication of the whole, under this view of the law, could at best have only passed title to an undivided half, and this'the adjudicatee could not be forced to accept under an advertisement of a proposed sale of the property in its entirety. This is what we understand appellant to insist upon as being the situation in this case when he says that the adjudication could at the utmost only vest title in him to an undivided half, when the purchase which he proposed to make was of the property in its entirety.- Appellees seem to have been afraid that this position might be well taken, as shown by the fact that after the adjudication the widow came forward and proposed to transfer to the adjudicatee any interest in the property she may have had which had not passed to him by the sale. She could not force the adjudicatee to accept any interest which did not pass to him under and by reason ' of the legal force and vigor themselves' of the decree of sale and the proceedings thereunder. We may at once state that he was under no legal obligation to accept any transfer so made, for, under such circumstances, to that extent the transfer would have been a voluntary, not a judicial, one, and might have subjected him to great future danger. If, however, the dative tutor of the minors was legally administering, as such, the entire succession of the husband, the administration extending over the coihmunity in its entirety, then we would be required simply to see whether the proceedings were regular, and what the effect of the sale would be upon the rights of the wife and of those of her creditors. I-Iad the succession of Keppel been under the administration of Jacob J. Sellen as an administrator' eo nomine, there would have been no contest, we imagine, as to his right, under the circumstances of this case, to have applied for, nor as to the right of the court to have granted, an order for the sale of this property for cash in its entirety for the purpose of paying the debts of the succession. We presume, had such a sale been made for that purpose in this succession, that it would 'be readily conceded that the effect of the sale would have been to raise from the property the mortgages which affected it in the name of the deceased, and to transfer the rights of the mortgage creditors to the proceeds of sale in the hands of the administrator. The purchaser would have' taken the *259 property free from incumbrances, and the mortgage creditor would have to look for payment to the proceeds of the sale. The rights of the creditors of the succession or of the community being paramount upon community property to those of the creditors of the widow in community or of the individual heirs of the deceased, the adjudieatee would have been placed beyond danger of any demands from them by paying the price of adjudicating into the hands of the administrator. Succession of Leverich, 47 La. Ann. 16C5, 18 South. 700; Childs v. Sheriff, 107 La. 283, 31 South. 751. Appellant seems to fear that, even if the adjudication made to him were a valid judicial sale of the whole property for the payment of community debts, the interest of the mother in the undivided half of the property would remain affected in his hands by the legal mortgage of the minor heirs against her resulting from her tutorship. There are several reasons why, in this ease particularly, his apprehension would be groundless. The mother has long since ceased to be tutrix. She has beens replaced by a dative tutor. Her final liability as tutrix has been tested contradictorily with this new tutor, and he has been discharged and the .mortgage securing her liability has been canceled. Bayhi v. Bayhi, 35 La. Ann. 531, 532; Succession of Leverich, 47 La. Ann. 1665, 18 South. 700; Porche v. Ledoux, 12 La. Ann. 351. This condition of affairs would fully protect the adjudieatee. If the minors should for any reasons have been injured in the premises, they would have to look to the new tutor for redress. Again, the mother being no longer tutrix, she was not, after her discharge, authorized to receive any longer into her hands moneys falling to her children. Her gestión closed with her discharge, and by no possibility could the property purchased be affected by the fact that she may have later handled money or property of the minors, or may hereafter handle same. If Jacob Sellen, as dative tutor of the minors, administering the succession of the father, was authorized to have sold the property of the succession for the payment of its debts without consulting the widow or the heirs, the fact that he may have consulted the widow or convoked a family meeting to deliberate as to what effect the sale would have or might have on the interest of the minors 'would not and could not affect the legality of the sale. If the sale could and would stand legally, regardless of any such family meeting, the holding of such meeting could not prejudice the situation. Munday v. Kaufman, 48 La. Ann. 599, 600, 19 South. 619. “Utile per inutile non vitiatur.” The holding of the meeting would simply demonstrate the fact that the friends of the minors and the district judge were in accord with the tutor as to the necessity and propriety of the sale. Whether the undertutor had been sworn or not when he approved the deliberations of the family meeting that recommended the sale would, under such circumstances, be a matter of no moment, and we are not prepared to say that, had the deliberations of the family meeting been essential to the legality of the sale, the failure of the undertutor to have taken oath would have been fatal so far as the adjudieatee is concerned. He had been recognized by the court as the legal undertutor of the minors, and it had acted upon his status as such. It was not affirmatively shown that he had not taken an oath. The adjudieatee had the right to presume that he had complied with the law. He was, at least, an undertutor de facto, and the action taken under his approval was no more a nullity than would be judgments rendered by a judge who should have been discovered (after he had occupied the bench for years) to have neglected to have taken an oath. Succession of Sadler v. Henderson, 35 La. Ann. 829; McCoy’s Heirs v. Derbonne, 109 La. 312, 33 South. 326. The district judge had authority, however, to withhold giving his approval to an act still *261 incomplete, or might set it aside before consummation, if he had reason to believe that in the interest of the minors they would receive injury, as the law was enacted in their interest, and this court has the same right. He did not, however, reach that conclusion.
Appellee has raised several objections in which he has no legal interest. He is not before the court for the purpose of protecting the owner’s interests, but he has the right to set up any grounds necessary for the protection of his own. If his position be not one of danger to himself, he cannot release himself from his self-imposed obligations by championing the rights of third parties.
There is one circumstance connected with this case which, up to this time, we have failed to notice. It is that the holder of the mortgage debt due by the succession does not seem to have been pressing payment of his claim, and, in fact, could not have done so, as it was payable in installments, many of which were not yet due. The holder, however, has consented to receive payment out of the proceeds should the property be sold, but without entering into details.
We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.
BREAUX, C. J., and MONROE, J., dissent.