**Succession of REED.**

**No. 1398.**

Court of Appeal of Louisiana.
First Circuit.

Dec. 4, 1934.

Fred. G. Benton and R. F. Walker, both of Baton Rouge, for appellant.

Carlos G. Spaht, of Baton Rouge, for appellee.

LE BLANC, Judge.

Lillian Reed, wife of Eddie Reed, died at her residence and place of domicile in the city of Baton Rouge, on June 12, 1933. Shortly thereafter, her husband presented a petition to the district court of East Baton Rouge parish, in which he alleged that his deceased wife had left property, real and personal, situated within the parish and that there were some debts, both privileged and ordinary, due by her estate, which rendered an administration of her succession necessary. The petition further showed that the decedent had left three minor children, Lillian Reed, David Reed, and Eddie Reed, Jr., issue of her marriage with the petitioner for whom it became necessary that a tutor and undertutor be appointed, and he accordingly prayed that he, being their father, be appointed as their natural tutor and that in due course an undertutor also be appointed.

An inventory of the property belonging to the decedent's estate was taken and the only property listed was a parcel of ground together with the buildings and improvements thereon, the whole appraised at the sum of $1,800. An extract of the inventory was duly recorded in the mortgage records of the parish, according to law, and in due time Eddie Reed was confirmed as natural tutor of his minor children. J. E. Perrier was confirmed as undertutrix and they both qualified by taking the oath prescribed by law.

It was on July 24, 1933, that the natural tutor and undertutrix qualified as just stated. Nothing further appears to have been done in the proceeding until December 15, 1933, on which day the natural tutor petitioned the court for an order to sell the property of the succession, as fully described in the inventory, to pay the privileged debts listed in the petition as follows:

| | |
|---|---|
| Fees of the Notary and appraisers for taking the inventory | $ 19.00 |
| Charges of the Clerk of Court, thus far incurred | 13.25 |
| Further charges of the Clerk, estimated | 15.00 |
| Attorney's fees | 200.00 |
| Mortgage note with interest, running at 8% from August 12, 1932 | 650.00 |
| City, State and Parish taxes | 66.97 |
| | $964.22 |

The mortgage note of $650 was secured by mortgage on the property of the estate, which mortgage had been granted by the decedent on August 12, 1930. At the time of these proceedings, the note was held by Pasquale Materiste, who, it appears, had, on November 22, 1933, instituted suit and obtained an order of executory process on the mortgage. He had originally obtained service of the notice to pay on an attorney at law appointed to represent the minor children of Lillian Reed, being unaware at the time that their father had been confirmed as their natural tutor. On December 11, 1933, having discovered that Eddie Reed had been appointed natural tutor, he filed a supplemental petition alleging such fact and asked that Reed be served with notice to pay and that a writ of seizure and sale issue and that the property be readvertised for sale. Averring further that it would prejudice his rights as mortgage creditor if the tutor were permitted to sell the property under the order granted by the court on December 15, 1933, in order to pay debts, in that the proceeds from the sale would then form part of the assets of the succession and the property would then have to bear its just proportion of the expenses of the succession, he prayed that the said order be rescinded and that he be permitted to continue the foreclo-

sure proceedings which he had initiated. The court issued a rule nisi directing Eddie Reed, natural tutor, to show cause on January 9, 1934, why the demands of the mortgage creditor, Materiste, as prayed for, should not be granted.

The natural tutor answered the rule and the same was tried on the return day and taken under advisement by the court. On January 18, 1934, the court rendered judgment making the rule absolute and rescinding the ex parte order for the sale of the property in order to pay the debts. The sale was then made under the order of executory process on January 27, 1934, and there was derived the sum of $800. The natural tutor had, in the meantime, intervened in the foreclosure suit of Materiste and obtained an order of court directing the sheriff to hold the proceeds in his hands. After the foreclosure sale, Materiste, the mortgage creditor, again appeared in this proceeding and, averring in his petition that, after paying the taxes due on the property, the sheriff's commission, the costs of court and advertisement, there would be lacking between the sum of $200 and $500 from the amount in the hands of the sheriff, with which to pay his claim in full, including the accrued interest and attorney's fees provided for in the act of mortgage, he claimed to be a creditor of the estate of Lillian Reed in a sum between the two amounts named. As such creditor, he opposed the further administration of the estate by Eddie Reed as natural tutor of the minors, and asked that he be enjoined from further administration unless and until he qualified as administrator or other representative, by making bond, etc., according to law. The court again issued a rule against Reed, ordering him to show cause. Reed made proper return to the rule and on trial thereof the court made the same absolute and enjoined him from further administration or meddling with the estate of the decedent until he had qualified as administrator. This appeal is from the judgment on that rule.

The question presented is, Can a natural tutor administer the estate of his deceased wife in his capacity as tutor and, assuming that he cannot do so when there is opposition on the part of the creditors, what remedy can the complaining creditors pursue?

There is no express authority given by statute to the natural tutor to administer the succession of his deceased wife in his capacity as tutor. Indeed, by the earlier jurisprudence, such authority seems to have been denied him. Jacobs v. Tricou, 17 La. 104; Tildon v. Dees, 1 Rob. 407; Self v. Morris, 7 Rob. 24; Beale v. Walden, 11 Rob. 67; Arthur v. Cochran, 12 Rob. 41. In later cases, the court relented in its attitude in denying the right to the tutor to administer under any circumstances, and modified the rule to the extent that he was denied such authority only in cases where the administration was not opposed by creditors of the estate. In the case of State ex rel. Jones v. City of Shreveport, 33 La. Ann. 1247, the court, in referring to the rule as laid down in the decisions cited above, specifically states that they "are overborne by a long line of decisions, commencing over thirty years ago, with the case of Bryan v. Atchinson, 2 La. Ann. 463, and followed by many others, which settle the principle, that, where the heirs of a decedent are minors, their tutor can, as it were, ex officio, administer his succession, so long as not opposed by creditors, *who may require the appointment of an administrator.*" (Italics ours.) Subsequent decisions leave no doubt as to the right of creditors to object to the natural tutor representing the estate of the deceased, and indeed counsel for the natural tutor in this case does not seriously dispute that proposition.

Pasquale Materiste claims to be a creditor of the estate of the decedent in the sum of at least $200 and we do not understand counsel for the tutor of the minors to contradict that. His first contention is that as creditor, Materiste did not timely urge his objection. In none of the decisions under which the creditor's right to object has been recognized is the time within which he should make the opposition stipulated. In this case, the sale of the property under foreclosure took place on January 27, 1934. It was only after he knew what the proceeds from that sale were, that Materiste could know if he would have a deficiency claim against the succession and thus become an ordinary creditor of the estate. On ascertaining what that amount would approximately be, he presented his objection to the tutor's further administration on February 2, 1934, which was only six days after the sale had taken place. He could hardly be expected to have acted any sooner and we hold that his opposition was timely.

Counsel's most serious contention, however, is that, granting the creditor his right of opposition, he can only object to further administration by the tutor acting in his capacity as such without posting bond. In other words, all that he has the right to do is to demand that the tutor give security. Here

again, as conceded by counsel, we have no specific law pointing out the procedure to be followed, but it is contended that by analogy the provisions of article 1677, Rev. Civ. Code, should be applied.

Turning to that article, we find that it comes under that chapter of the Code treating of dispositions mortis causa and particularly under that section of the chapter which treats of the opening and proof of testaments and of testamentary executors. The article itself has reference to the acceptance and rejection of executorship and to the cases in which the executor may be compelled to give security. It is pretty far removed from those articles of the Code which treat of the tutorship of minors and which are found in a different chapter altogether. The only analogy between the two subjects lies in the fact that they both relate to the administration of estates, but the fundamental difference between them, as it seems to us, is that an executorship involves the administration of the entire estate of the decedent for the benefit of the creditors as well as of the heirs and legatees, whereas a tutor is charged with the administration of his minor's estate only. True it is that the decisions which we have referred to recognize his rights to administer, "ex officio, as it were," the succession of the decedent where the heirs are minors, but, as shown by those same decisions and also by a recent decision of the Court of Appeal for the parish of Orleans, that right "depends upon the absence of objection by creditors." Dorsey v. Metropolitan Life Insurance Co., 145 So. 304, 307. It may also appear from certain of those decisions that the tutor might have been permitted to administer the succession simply by furnishing security. For instance, we might refer to Ingram v. Laroussini, 50 La. Ann. 70, 23 So. 498, and Succession of Campbell, 132 La. 746, 61 So. 777, but in none of those cases does it appear that there was a creditor objecting and who "required the appointment of an administrator" as is being done in this case, and who may make such a demand, under the decision in the case of State ex rel. Jones v. City of Shreveport, supra. Perhaps noteworthy, in connection with this discussion, is the statement of the court in the decision in the case of Succession of Campbell, supra, which involved a demand on the part of a surety to be released from a bond of a tutrix, to the effect that "a judicial bond given in a case where the law does not require any is not binding on anybody, * * * and a natural tutrix is not required to furnish bond."

But coming back to article 1677, Rev. Civ. Code, under which counsel for the tutor would have the creditor in this case proceed, we note that it provides the right for any one claiming money against a succession that is being administered by a testamentary executor to compel the latter to give security for an amount exceeding by one-fourth the amount of money claimed. The method of procedure is prescribed and it is then provided that if the testamentary executor fail to furnish the security, when so ordered by the judge, and within the delay allowed, such failure "shall ipso facto work an immediate removal of the testamentary executor, and the judge shall appoint a dative testamentary executor." To carry the analogy which counsel contends for, it is necessary to anticipate what would happen if the natural tutor were to fail to comply with the order of the judge to furnish security. Would such failure ipso facto cause his removal as natural tutor of his minor children and force the judge to appoint a dative tutor? We hardly think that the analogy could be extended that far, and believe under the circumstances that the most effective and practical procedure is that suggested by the decision in the case of State ex rel. Jones v. City of Shreveport, supra, in which it is stated that the creditor who objects to the administration of the estate by the natural tutor, "may require the appointment of an administrator."

Counsel further contends that Materiste has no interest in demanding an administration of the succession as there are privileged debts ranging over the $200 debt which he claims as an ordinary creditor, and, as that debt would therefore be absorbed, there would be nothing left for distribution in which he would have an interest. This, however, is a matter which would arise in the course of the administration of the succession and could only be disposed of on a consideration by the court of the administrator's account and any opposition which may be made thereto. The question at this time is premature.

We think that the judgment appealed from has properly disposed of the issue that is now presented, and it is therefore affirmed.